Stanley J. HOFBAUER and Jean F. Hofbauer, Plaintiffs,

v.

The NORTHWESTERN NATIONAL BANK OF ROCHESTER, MINNESOTA, Defendant.

No. 1–79 Civ. 422.

United States District Court,
D. Minnesota,
First Division.

June 2, 1981.

Brown, Bins & Klampe by Michael D. Klampe, and Mary B. Stein, Rochester, Minn., for plaintiffs.

Briggs & Morgan by Richard G. Mark, and Bruce Mooty, Saint Paul, Minn., for defendant.

## MEMORANDUM

ALSOP, District Judge.

### APPROPRIATENESS OF SUMMARY JUDGMENT

When considering a motion for summary judgment, all facts must be viewed in the light most favorable to the party opposing the motion, and that party is entitled to the benefit of all reasonable inferences to be drawn from the facts. *Robert Johnson Grain Co. v. Chemical Interchange Co.*, 541 F.2d 207 (8th Cir. 1976). Also, the right to judgment must be shown with such clarity as to leave no room for controversy and it must appear that the opposing party would not be entitled to recover under any discernible circumstances. *Minnesota Bearing Co. v. White Motor Corp.*, 470 F.2d 1323 (8th Cir. 1973).

During oral argument, the court inquired of counsel for both parties as to the appropriateness of summary judgment at this time. Both counsel agreed that there was no genuine dispute as to any material facts relating to the liability of defendant under the various statutory provisions in question, and therefore, with regard to the liability issue, the case was ripe for summary judgment. The court concurs. The parties have reserved for later determination the issue of damages.

## SUBSTANTIVE ISSUES

In seeking summary judgment, the parties presented the following issues to the court:

1. Are federal statutes 42 U.S.C. § 4012a(b) and 42 U.S.C. § 4104a and the regulations promulgated thereunder applicable to the Hofbauer transaction in light of the language and effective date of 42 U.S.C. § 4106(b)?

2. Do federal statutes 42 U.S.C. § 4012a(b) and 42 U.S.C. § 4104a and the regulations promulgated thereunder give rise to an implied private cause of action for damages on behalf of the plaintiffs?

3. If an implied private cause of action exists, did defendant comply with the provisions of 42 U.S.C. § 4012a(b) and 42 U.S.C. § 4104a and the regulations promulgated thereunder?

4. Apart from any implied private cause of action that may exist, do federal statutes 42 U.S.C. § 4012a(b) and 42 U.S.C. § 4104a and the regulations promulgated thereunder create a statutory standard of conduct that if breached would give rise to an action for common law negligence?

## APPLICABILITY OF THE STATUTES

There are three principal statutory provisions at issue. They are:

1. 42 U.S.C. § 4012a(b) which provides:

Each Federal instrumentality responsible for the supervision, approval, regulation, or insuring of banks, savings and loan associations, or similar institutions shall by regulation direct such institutions not to make, increase, extend, or renew after the expiration of sixty days following December 31, 1973, any loan secured by improved real estate or a mobile home located or to be located in an area that has been identified by the Secretary as an area having special flood hazards and in which flood insurance has been made available under this chapter, unless the building or mobile home and any personal property securing such loan is covered for the term of the loan by flood insurance in an amount at least equal to the outstanding principal balance of the loan or to the maximum limit of coverage made available with respect to the particular type of property under the chapter, whichever is less.

2. 42 U.S.C. § 4104a which provides:

Each Federal instrumentality responsible for the supervision, approval, regulation, or insuring of banks, savings and loan associations, or similar institutions shall by regulation require such institutions, as a condition of making, increasing, extending, or renewing (after the expiration of thirty days following August 22, 1974) any loan secured by improved real estate or a mobile home located or to be located in an area that has been identified by the Secretary under this chapter or Public Law 93–234 as an area having special flood hazards, to notify the purchaser or lessee (or obtain satisfactory assurances that the seller or lessor has notified the purchaser or lessee) of such special flood hazards, in writing, a reasonable period in advance of the signing of the purchase agreement, lease, or other documents involved in the transaction.

3. 42 U.S.C. § 4106(b) which provides in pertinent part:

Each Federal instrumentality responsible for the supervision, approval, regulation, or insuring of banks, savings and loan associations, or similar institutions shall by regulation prohibit such institu-

tions on and after July 1, 1975, from making, increasing, extending, or renewing any loan secured by improved real estate or a mobile home located or to be located in an area that has been identified by the Secretary as an area having special flood hazards, unless the community of which such area is situated is then participating in the national flood insurance program, except that the prohibition contained in this sentence shall not apply to (1) any loan made to finance the acquisition of a residential dwelling occupied as a residence prior to March 1, 1976, or one year following identification of the area within which such dwelling is located as an area containing special flood hazards, whichever is later, or made to extend, renew, or increase the financing or refinancing in connection with such a dwelling, . . . .

The defendant contends that the National Flood Insurance Act (the "Act"), of which the three above-quoted statutes are a part, is not applicable to the Hofbauer transaction because of the language of § 4106(b). First, defendant claims § 4106(b) exempts from the application of the Act any loan made to finance the acquisition of a residential dwelling occupied as a residence prior to January 1, 1976,[1] and since the Hofbauer residence was occupied in March of 1975, the Act does not apply. Plaintiffs respond by pointing out that the 1975 amendment adding the exemption provision was not enacted until nearly four months *after* the Hofbauer transaction closed, and that the defendant should not be permitted to escape liability by relying on an exemption that did not even exist at the time the conduct complained of took place. The court agrees. Moreover, defendant's position assumes that § 4106(b) is controlling over all other sections of the Act, *i.e.,* if a transaction fits within the exemption provision of § 4106(b), it is automatically exempt from all other sections of the Act.

The court feels this is an improper interpretation of the Act. As more fully discussed hereafter, each of the three sections involved herein, § 4012a(b), § 4104a and § 4106(b), is independent of the other two.

Defendant's second argument regarding the inapplicability of the Act to the Hofbauer transaction is that § 4106(b) has an effective date of July 1, 1975, some four months after the Hofbauer transaction took place. While recognizing that §§ 4012a(b) and 4104a have effective dates of "sixty days following December 31, 1973" and "thirty days following August 22, 1974," respectively, defendant again argues that § 4106(b) is controlling. Apart from plaintiffs' argument regarding the exemption provision listed above, they do not specifically address the issue of, as defendant puts it, the "inconsistent" effective dates of the three statutes. For the reasons set forth below, the court is of the opinion that there is no inconsistency among the statutes, that each of the three statutes must be looked at independently, and while a given transaction may be exempt from one section, it does not automatically follow that it is exempt from all other sections.

First, to hold that § 4106(b) is controlling would be to say that the effective dates of §§ 4012a(b) and 4104a are meaningless. It is difficult to imagine that Congress intended such a result.

Second, there is no reference to § 4106(b) in either § 4012a(b) or § 4104a. Further, the defendant has offered no evidence, and indeed there is none indicating that § 4012a(b) or § 4104a are in any way dependent on § 4106(b).

Third and most importantly is the fact that each section has its own very important and distinct purpose. Both §§ 4012a(b) and 4106(b) were enacted as part of the Flood Disaster Protection Act of

---

1. 42 U.S.C. § 4106(b) was amended in 1975 to exempt ". . . any loan made prior to January 1, 1976 to finance the acquisition of a previously occupied residential dwelling" Pub.L. 94–50, Title III, § 303, July 2, 1975, 89 Stat. 256. The section was again amended in 1976 changing the exemption deadline from January 1, 1976 to March 1, 1976, Pub.L. 94–375, § 14(a), Aug. 3, 1976, 90 Stat. 1075.

1973.[2] Section 4012a(b) requires that no loans be made "after the expiration of sixty days following December 31, 1973" if such loan is "secured by improved real estate ... located ... in an area ... identified ... as an area having special flood hazards and in which flood insurance has been made available under this chapter ..." unless flood insurance is obtained.

Section 4106(b), on the other hand, prohibits the making of any loan after July 1, 1975 if such loan is "secured by improved real estate ... located ... in an area ... identified ... as an area having special flood hazards, unless the community in which such area is situated is then participating in the national flood insurance program." Thus, § 4012a(b) and § 4106(b) have related but different purposes. Section 4012a(b) encourages the purchase of flood insurance where available, while § 4106(b) encourages local communities to participate in the national flood insurance program. Both are stated goals of the Act. See 42 U.S.C. § 4001.

The purpose of § 4106(b), and its relationship to the other sections of the Act, is further made clear by § 4105 which provides that the Secretary of Housing and Urban Development ("Secretary") must notify each community of its "identification as a community containing one or more areas having special flood hazards." The community then has a certain period of time in which to make "proper application to participate in the national flood insurance program." If a community fails to participate, it is then subject to the provisions of § 4106.[3]

After a careful reading of the various statutes involved, it is apparent that the time period between the enactment of § 4106(b) in 1973 and its effective date of July 1, 1975 was designed to provide sufficient time for the Secretary to identify the areas having special flood hazards and to

**2.** 42 U.S.C. § 4001, et seq.; 4101 et seq. (1973).

**3.** Rochester, the community in which the Hofbauer property is located, has been participating in the national flood insurance program since April 3, 1970; thus, the nonparticipation

notify the appropriate communities, and for the communities in turn to prepare and submit applications to participate in the national flood insurance program. However, the delay in the effective date of § 4106(b) in no way affects the application of the other sections of the Act. If, as we have here, a loan is closed in 1975, § 4012a(b) requires the purchase of flood insurance, regardless of the fact that § 4106(b) does not apply.

The other primary statute involved in the instant case is § 4104a which requires that the purchaser or lessee be notified if the property he is interested in is located in a specific flood hazard area. Section 4104a was enacted on August 22, 1974 as an amendment to the Act. Like § 4012a(b), § 4104a contains its own effective date— thirty days following August 22, 1974— which is not affected by the delay in the effective date of § 4106(b). Consequently, § 4104a is applicable to the Hofbauer loan since the loan closed in March of 1975, several months after the effective date of § 4104a.

## IMPLIED PRIVATE CAUSE OF ACTION

Both parties agree that there is no provision in the Act which expressly authorizes a borrower to bring legal action against a lender who has either failed to notify it of the necessity of flood insurance or failed to require the purchase of flood insurance. However, plaintiffs contend that 42 U.S.C. §§ 4012a(b) and 4104a and the regulations promulgated thereunder give rise to an implied private cause of action against such lenders.

In Cort v. Ash, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), the United States Supreme Court set forth the following factors to be considered when determining if a statute creates an implied private cause of action:

sanctions of § 4106(b) would not have been applicable to the Hofbauer transaction even if it had occurred after the effective date of July 1, 1975.

1. Is the plaintiff one of a class for whose especial benefit the statute was enacted—that is, does the statute create a federal right in plaintiffs?

2. Is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one?

3. Is it consistent with the underlying purpose of the legislative scheme to apply such remedy for the plaintiff?

4. Is the cause of action one traditionally relegated to state law, in an area basically the concern of the State's, so that it would be improper to infer a cause of action based solely on federal law?

In a subsequent decision, *Touche Ross & Co. v. Redington,* 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979), the Supreme Court addressed the issue of the relative importance of the four *Cort* factors. Speaking for the court, Justice Rehnquist stated:

It is true that in *Cort v. Ash,* the court set forth four factors that it considered "relevant" in determining whether a private remedy is implicit in a statute not expressly providing one. But the Court did not decide that each of these factors is entitled to equal weight. The central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action. Indeed, the first three factors discussed in *Cort*—the language and focus of the statute, its legislative history, and its purpose, *see* 422 U.S., at 78 [95 S.Ct. at 2087–88]—are ones traditionally relied upon in determining legislative intent.

*Id.,* at 575–576, 99 S.Ct. at 2488–2489. Although there is considerable overlap among the four *Cort* factors, the court will discuss each one separately. Because of the importance placed on the factor of legislative intent, it will be discussed first.

A. *Is There Any Indication of Legislative Intent, Explicit or Implicit, Either to Create Such a Remedy or to Deny One?*

"The question of whether a statute creates a cause of action, either expressly or by implication, is basically a matter of statutory construction." (Citations omitted.) *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 15, 100 S.Ct. 242, 245, 62 L.Ed.2d 146 (1979) (hereinafter cited as *TAMA v. Lewis*). "And as with any case involving the interpretation of a statute, our analysis must begin with the language of the statute itself." (Citations omitted.) *Touche Ross & Co. v. Redington, supra,* 442 U.S. at 568, 99 S.Ct. at 2485.

It is asserted by the plaintiffs that the creation of a private right of action can be inferred from the language of two sections of the Act. The first is § 4012a(b) which prohibits the making of any loan unless the property "securing such loan is covered . . . by flood insurance." The second is § 4104a which provides that a lending institution must "as a condition of making . . . any loan secured by improved real estate . . . located . . . in an area . . . having special flood hazards . . . notify the purchaser . . . of such special flood hazards, in writing." It is apparent that the two sections were intended to benefit those individuals who borrow money for the purchase of improved real estate in an area having special flood hazards. However, "whether Congress intended additionally that these provisions would be enforced through private litigation is a different question." *TAMA v. Lewis, supra,* 444 U.S. at 18, 100 S.Ct. at 246.

■ In gaining an insight into the legislative intent of a statute, it is often helpful to look at the legislative history. All too often, however, the legislative history of a statute that does not expressly create or deny a private remedy will be equally silent on the issue. *Cannon v. University of Chicago,* 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1978). Such is the situation in the instant case, at least with regard to § 4012a(b). "But while the absence of anything in the legislative history that indicates an intention to confer any private right of action is hardly helpful to the [plaintiffs], it does not automatically undermine [their] position. This court has held

that the failure of Congress expressly to consider a private remedy is not inevitably inconsistent with an intent on its part to make such a remedy available." (Citation omitted.) *TAMA v. Lewis, supra,* 444 U.S. at 18, 100 S.Ct. at 246. Thus, in a situation such as we have here, the court must look to other factors that may indicate legislative intent, including whether other express remedies are provided for in the Act and the circumstances of its enactment, both of which are discussed more fully hereafter.

The legislative history of § 4104a, like that of § 4012a(b), also contains no express consideration of a private remedy; however, the legislative history of § 4104a does contain some evidence that a private cause of action was intended. During a discussion on the floor of the House of Representatives, Congressman Jones stated:

> What this amendment does in essence is to say to a purchaser of property in a flood hazard area, as defined under the Flood Insurance Act which we passed this year, that before he can receive his loan the lender has to notify him in writing within a reasonable period of time before closing that the purchaser is in fact in a flood plain area, and it requires that satisfactory assurances be given by the seller or lessor that they have notified the purchaser or lessee.
>
> Mr. Chairman, it just seems to make sense. We are extending the truth and lending concept in this special area in order to make sure that before development occurs in a flood plain area notification be given.

The court agrees with plaintiffs' contention that "Congressman Jones' characterization of the amendment as an extension of the truth and lending concept suggests that a violation of the statute and regulations promulgated thereunder would constitute a tort-like wrong on the part of the lending institutions." *Plaintiffs' Memorandum In Support of Their Motion,* at 28.

As previously mentioned, the circumstances surrounding the enactment of a statute may also prove helpful in determining legislative intent. Section 4012a(b) was part of the original Act enacted in 1973. Apparently, whatever protection was given a borrower by requiring flood insurance under § 4012a(b) was thought by Congress to be insufficient because in 1974 it amended the Act to include the notification requirement of § 4104a. It is obvious Congress felt it important that the borrower be armed with the knowledge of whether or not the property he intended to purchase is in a flood hazard area. It naturally follows that a statutory provision such as § 4104a is absolutely meaningless unless the party to be notified has some way of enforcing it.

Yet another indication of whether Congress intended to imply a private cause of action is the extent to which express remedies have been provided for in the Act. "[I]t is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." *TAMA v. Lewis, supra,* 444 U.S. at 19, 100 S.Ct. at 247. Defendant points to two provisions of the Act which it says expressly recognizes "the existence of two other kinds of causes of action." The first is § 4053 which provides that if the insured's claim under his flood insurance policy is denied by the insurance company, the insured "may institute an action on such claim . . . in the United States district court . . . and jurisdiction is . . . conferred upon such court to hear and determine such action without regard to the amount in controversy." The remedy involved is a suit in law for breach of contract. This remedy would exist irrespective of § 4053 which merely confers jurisdiction to the federal district court in certain situations where the court would not otherwise have jurisdiction under its general jurisdictional grant. Section 4053 is totally unrelated to § 4012a(b) and § 4104a, and nothing contained therein suggests that an implied private cause of action is not available under either § 4012a(b) or § 4104a.

The other section which defendant suggests contains an express remedy is § 4104. It provides that owners, lessees and communities who feel a flood designation is incor-

**948**

rect may appeal that designation to federal court. Like § 4053, § 4104 has no relationship to § 4012a(b) or § 4104a. "The fact that other provisions of a complex statutory scheme create express remedies has not been accepted as a sufficient reason for refusing to imply an otherwise appropriate remedy under a separate section." *Cannon v. University of Chicago, supra,* 441 U.S. at 711, 99 S.Ct. at 1965.

■ Neither statutory provision raised by defendant provides for any remedy against a lending institution for failing to require flood insurance or for failing to notify a borrower that the property he intends to purchase is in a flood hazard area. Thus, the court is not persuaded that § 4053 or § 4104 are evidence that Congress did not intend a private remedy under § 4012a(b) or § 4104a. It is the court's opinion that the purpose of the Act, its legislative history, its language and structure, and the circumstances surrounding its enactment point to a Congressional intent to create a private cause of action against any lender who fails to comply with the requirements of § 4012a(b) or § 4104a. Having answered the "central inquiry"— whether Congress intended to create a private remedy—in the affirmative, our inquiry now turns to the other *Cort* factors.

B. *Is the Plaintiff One of a Class for Whose Especial Benefit the Statute was Enacted—That is, Does the Statute Create a Federal Right In Plaintiffs?*

The question of whether the statute was enacted for the benefit of a special class of which the plaintiff is a member is answered by the language of the statute itself. *Cannon v. University of Chicago, supra.* Section 4012a(b) requires that any property securing a loan be "covered for the term of the loan by flood insurance." Section 4104a requires that lending institutions, "as a condition of making . . . any loan secured by improved real estate . . . located in an area . . . having special flood hazards, to notify

the purchaser or lessee of such special flood hazards, in writing . . . ." The language in these statutes contrasts sharply with the language of criminal statutes[4] and other laws enacted for the protection of the general public[5] upon which the Supreme Court has been reluctant to imply a private remedy. The statutes in question make it clear that Congress intended to benefit the class comprised of mortgagors borrowing from financial institutions which are regulated by "federal instrumentalities."

■ Defendant contends that it is not enough that plaintiff is a member of a special class for whose benefit the statute is enacted, but rather that the class of which plaintiff is a member must be the only beneficiary. The court cannot agree. It is difficult to imagine any legislation which will not in some way benefit more than one class of individuals. Moreover, the Supreme Court in holding that there was an implied remedy in the recent case of *Cannon v. University of Chicago, supra,* in no way suggested that plaintiffs must be the only beneficiary before a private remedy may be implied. Therefore, the court finds that plaintiffs are members of a class for whose special benefit § 4012a(b) and 4104a were enacted, satisfying the first *Cort* factor.

C. *Is It Consistent With the Underlying Purposes of the Legislative Scheme To Apply Such Remedy for the Plaintiffs?*

■ The act was amended in 1973 by the Flood Disaster Protection Act of 1973. The purpose of the amendment, of which § 4012a(b) is a part, is set forth in § 4002, which provides in part:

(a) The Congress finds that—

(1) annual losses throughout the nation from floods and mudslides are increasing at an alarming rate, largely as a result of the accelerating development of, and concentration of population in, areas of flood and mudslide hazards;

---

**4.** *See Cort v. Ash, supra.*

**5.** *See Cannon v. University of Chicago, supra,* footnote 13.

(5) the Nation cannot afford the tragic losses of life caused annually by flood occurrences, nor the increasing losses of property suffered by flood victims, most of whom are still inadequately compensated despite the provision of costly disaster relief;

(6) it is in the public interest for persons already living in flood prone areas to have both an opportunity to purchase flood insurance and access to more adequate limits of coverage, so that they will be indemnified for their losses in the event of future flood disasters.

(b) The purpose of this Act, therefore, is to—

(4) require the purchase of flood insurance by property owners who are being assisted by Federal programs or by federally supervised, regulated, or insured agencies or institutions in the acquisition or improvement of land or facilities located or to be located in identified areas having special flood hazards.

While no one has contended that requiring the purchase of flood insurance was the only purpose for enacting the Flood Disaster Protection Act of 1973, it was certainly an important purpose. Permitting mortgagors to bring legal action against those lending institutions who fail to require flood insurance would certainly encourage lending institutions to see that flood insurance was required. Thus, implying a private remedy would be consistent with the underlying purpose of the Act.

Section 4104a was enacted in 1974 without any additionally stated declaration of purpose. However, the language of the statute and the legislative history previously discussed make it clear that Congress saw a need for prospective buyers to be informed of any special flood hazards associated with the property they intended to buy. It is beyond question that the notification provision of § 4104a benefits only the prospective buyers, and that the right to be notified becomes hollow and meaningless unless they are also given a method of enforcing the rights. As was the case for

§ 4012a(b), implying a private remedy for the violation of § 4104a would be consistent with the underlying purpose of the Act. The third *Cort* factor is thus satisfied.

D. *Is the Cause of Action One Traditionally Relegated to State Law, in an Area Basically the Concern of the States, So That It Would Be Improper to Infer a Cause of Action Based Solely on Federal Law?*

The last of the *Cort* factors is not at issue here since even defendant admits that "(t)he National Flood Insurance Act is solely a creation of Federal Law" and that "state law implications are inappropriate." *Defendant's Memorandum of Points and Authorities in Support of Its Motions* at 34.

An examination of all the *Cort* factors leads to the conclusion that 42 U.S.C. §§ 4012a(b) and 4104a do give rise to an implied private cause of action in favor of the plaintiffs.

## DID DEFENDANT COMPLY WITH THE PROVISIONS OF 42 U.S.C. §§ 4012a(b) AND 4104a AND THE REGULATIONS PROMULGATED THEREUNDER?

Up until this point the court has focused its attention on the statutes themselves. However, the statutes do not require lending institutions to do anything, but instead direct "[e]ach Federal instrumentality responsible for the supervision, approval, regulation, or insuring of banks, savings and loan associations or similar institutions" to promulgate regulations requiring lending institutions to do those things set forth in the statutes. Section 4003(a)(5) defines "federal instrumentality" to include the Board of Governors of the Federal Reserve System, the Federal Deposit Insurance Corporation, the Comptroller of the Currency, the Federal Home Loan Bank Board, the Federal Savings and Loan Insurance Corporation, and the National Credit Union Administration. To determine, therefore, whether defendant complied with 42 U.S.C. §§ 4012a(b) and 4104a, the court must consider the regulations promulgated by the various "federal instrumentalities."

Pursuant to 42 U.S.C. §§ 4012a(b) and 4104a, the Comptroller of the Currency issued regulations which are codified in 12 C.F.R. § 22, and which provide as follows:

No bank shall make, increase, extend or renew any loan secured by improved real estate or a mobile home located or to be located in an area that has been identified by the Secretary of Housing and Urban Development as an area having special flood hazards and in which flood insurance has been made available under the National Flood Insurance Act of 1968, unless the building or mobile home and any personal property securing such loan is covered for the term of the loan by flood insurance in amount at least equal to the outstanding principal balance of the loan or to the maximum limit of coverage made available with respect to the particular type of property under the Act, whichever is less. 12 C.F.R. § 22.2. After September 21, 1974, each bank shall, as a condition of making, increasing, extending, or renewing any loan secured by improved real estate or a mobile home located or to be located in an area that has been identified by the Secretary of Housing and Urban Development as an area having special flood hazards, mail or deliver as soon as feasible but not less than 10 days in advance of closing of the transaction (or not later than the bank's commitment, if any, if the period between commitment and closing is less than 10 days) a written notice to the borrower that the property securing the loan is in an area so identified. In lieu of the notification required in this section a bank may obtain satisfactory written assurances from the seller or lessor that such seller or lessor has notified the borrower, prior to the execution of any agreement for sale or lease, that the property securing the loan is in an area so identified. 12 C.F.R. § 22.6.

Defendant admits that it did not comply with the requirements of 12 C.F.R. § 22, but contends that it nonetheless complied with the Act and the applicable regulations. Defendant bases its contention on the fact that the loan made to the plaintiffs in the instant case was an FHA insured loan and that defendant complied with all the FHA regulations relating thereto. Specifically, the FHA promulgated a regulation codified in 24 C.F.R. § 203.16a which provides:

If the mortgage is to cover property that (1) is located in an area designated by the Secretary as a flood plain area having special flood hazards or (2) is otherwise determined by the Commissioner to be subject to a flood hazard; and if flood insurance under the National Flood Insurance Program (NFIP) is available with respect to such property, the mortgagor and mortgagee shall be obligated by a special condition to be included in the mortgage insurance commitment, to obtain and to maintain NFIP flood insurance coverage on the property during such time as the mortgage is insured. The flood insurance to be maintained shall be in an amount at least equal to either the outstanding balance of the mortgage, less estimated land costs, or the maximum amount of NFIP insurance available with respect to the property, whichever is less.

It is defendant's position that the only obligation it has regarding the requirement of flood insurance is that obligation which would arise if the FHA included a special condition in the mortgage insurance commitment pursuant to 24 C.F.R. § 203.16a. Since FHA failed to include the special condition in the insurance commitment, no obligation arose.

Further, defendant points to a guideline of the Federal Insurance Administration ("FIA"), the agency which regulates the issuance of flood insurance, which provides as follows:

The burden of determining the location of the real property to be financed is on the lender and cannot be discharged merely by obtaining a self certification from the borrower that the property is not located in an area having special flood hazards. If an appraisal of the property is required, its location in relation to the identified special flood hazard

area should be part of the appraisal. If no appraisal is obtained, then the lending institution should verify the location. 39 Fed.Reg. at 26188 (July 17, 1974); 43 Fed.Reg. at 7145 (February 17, 1978).

In the instant case, an FHA appraisal of the property was required by FHA regulation. Since an FHA appraisal was required and was obtained, defendant contends that the duty of the lending institution to verify the location did not arise.

■ Defendant claims that further support for their position that lenders are entitled under the statutory and regulatory scheme to rely upon the appraisals made by the FHA is found in a recent interpretive letter by the Comptroller of the Currency. The question submitted to the Comptroller and the response thereto were as follows:

4. If a property is in a flood plain, but represented as not being located therein by a qualified appraiser, is the bank justified in relying on the appraiser? Yes. Although the bank carries the responsibility of determining whether property is located in a special flood hazard area, an opinion from a qualified appraiser is an acceptable means of discharging this responsibility. However, the bank may not simply rely on a self certification from the borrower. Banking Circular No. 117, August 25, 1978.

In sum, defendant's position is that it properly relied on the FHA commitment and appraisal. If there was any wrongdoing it was by the FHA, and plaintiffs should pursue whatever remedies they may have against the agency. The court cannot agree. While the court concurs that the FHA failed to properly identify the plaintiffs' property as being located in a special flood hazard area, whatever risk which resulted from the bank's reliance on the erroneous determination by the FHA should be properly borne by the bank and not by the plaintiffs. The duties imposed by 12 C.F.R. § 22 are clear and unequivocal. Defendant breached those duties. The fact that it complied with all FHA requirements does not relieve it from the duties imposed by 12

C.F.R. § 22. The FHA is not a federal instrumentality and its regulations only apply to FHA insured loans. On the other hand, the Comptroller of the Currency is a federal instrumentality and the regulations he promulgated, which are now codified in 12 C.F.R. § 22, apply to all loans and were promulgated as a direct response to the two statutory provisions in question, *i.e.*, 42 U.S.C. §§ 4012a(b) and 4104a. To the extent there is any conflict in the regulations, those promulgated by the Comptroller of the Currency are controlling.

■ Similarly, the guideline issued by the FIA does not relieve defendant of liability. Like the FHA, the FIA is not a federal instrumentality and thus the guideline was not promulgated as a direct response or legal consequence of 42 U.S.C. §§ 4012a(b) or 4104a. Moreover, the guideline makes it clear that the lender has the primary "burden of determining the location of the real property" in relation to the identified special flood hazard area. The guideline goes on to state that "[i]f an appraisal ... is required, its location in relation to the identified special flood hazard area *should* be part of the appraisal." (Emphasis added.) The court feels this language falls short of relieving defendant of all responsibility in determining the location of the property.

Finally, defendant argues that the interpretive letter by the Comptroller of the Currency must be given deference by this court. In *Southeastern Community College v. Davis,* 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979), the United States Supreme Court stated:

Although an agency's interpretation of the statute under which it operates is entitled to some deference, "this deference is constrained by our obligation to honor the clear meaning of a statute as revealed by its language, purpose and history." (Citation omitted.)

*Id.* at 411, 99 S.Ct. at 2369. Here the language, purpose and history of § 4012a(b) and § 4104a reveal an intent by Congress to protect mortgagors from flood losses. It is a simple matter for the lending institutions

to refer to the flood maps to determine if the property in question is located in a special flood hazard area. If they, as defendant did here, rely on someone else to make such a determination, they do so at their own peril.

Therefore, the court finds that defendant breached the duties imposed upon it by 42 U.S.C. §§ 4012a(b) and 4104a, and the regulations promulgated thereunder, and is liable to the plaintiffs for any damages they may have sustained as a result of defendant's breach.

## STATUTORY STANDARD OF CONDUCT GIVING RISE TO AN ACTION FOR COMMON LAW NEGLIGENCE

■ Plaintiffs assert that irrespective of whether an implied private cause of action exists under 42 U.S.C. § 4012a(b) and 42 U.S.C. § 4104a and the regulations promulgated thereunder, the statute and regulations create a standard of conduct that if breached would give rise to an action for common law negligence. Plaintiff cites a number of cases in support of their position. However, a careful reading of the cases reveals that none of them stand for the proposition that a negligence action can be based upon a federal statute even though no private right of action exists under the same statute. For the most part, those cases which talk in terms of a cause of action based on negligence are citing from earlier cases which used negligence as a basis for implying a private cause of action. As discussed in detail earlier, the standards to be applied in determining if a statute gives rise to an implied cause of action have been revised over the years by the United States Supreme Court, the current standards being set forth in *Cort v. Ash, supra.* The modern cases, for the most part, do not talk in terms of a negligence standard. From this history, it would appear that saying a statute creates a duty which if breached gives rise to a negligence claim and saying a statute implies a private cause of action are actually two ways of saying the same thing. At the very least, there is considerable overlap between these two theories of recovery, and it is impossible for the court to imagine any situation where a cause of action for negligence would exist where there is not also an implied private remedy available.

For these reasons, the court holds that plaintiffs have no cause of action for common law negligence and are limited to recovery on the basis of an implied private remedy.

■ In summary, the court finds that plaintiffs are entitled to judgment as a matter of law on the grounds that 42 U.S.C. § 4012a(b) and 42 U.S.C. § 4104a and the regulations promulgated thereunder create an implied cause of action and that defendant breached the duties imposed upon it by those statutes and regulations.

## FINDINGS OF FACT CONCLUSIONS OF LAW AND ORDER

This matter comes before the court upon cross motions by both plaintiffs and defendant for partial summary judgment pursuant to Rule 56 of the Fed.R.Civ.P. The parties seek a determination as to the liability of defendant, the issue of damages being reserved for a later proceeding. Briefs were submitted on behalf of all parties, and oral argument was heard on December 12, 1980. Upon all the files, records and proceedings herein, the court makes the following:

### FINDINGS OF FACT

1. The court adopts and incorporates herein by reference the Stipulation of Facts agreed to by the plaintiffs and defendant, a copy of which is attached hereto as Exhibit A.

2. Northwestern did rely on the FHA determination that flood insurance was not required on the subject property.

### CONCLUSIONS OF LAW

1. Federal statutes 42 U.S.C. § 4012a(b) and 42 U.S.C. § 4104a and the regulations promulgated thereunder give rise to an implied private cause of action for damages on behalf of the plaintiffs.

2. Northwestern is a national bank subject to the provisions of 42 U.S.C. § 4012a(b) and 42 U.S.C. § 4104a and the regulations promulgated thereunder.

3. Northwestern failed to comply with the provisions of 42 U.S.C. § 4012a(b) and 42 U.S.C. § 4104a and the regulations promulgated thereunder.

4. Federal statute 42 U.S.C. § 4106(b) prohibits the making of loans secured by improved real estate located in a special flood hazard area, unless the community is participating in the national flood insurance program. The exemptions contained in 42 U.S.C. § 4106(b) in no way exempt defendant from the duties imposed upon it under 42 U.S.C. § 4012a(b) and 42 U.S.C. § 4104a and the regulations promulgated thereunder.

5. Federal statutes 42 U.S.C. § 4012a(b) and 42 U.S.C. § 4104a and the regulations promulgated thereunder do not create a standard of conduct for which the breach would give rise to an action for common law negligence. The only action available is that of an implied private cause of action for damages.

6. There exists no genuine issue between the parties as to any material facts, and the plaintiff is entitled to judgment as a matter of law under Rule 56 of the Fed.R. Civ.P.

Upon the foregoing Findings of Fact and Conclusions of Law,

IT IS ORDERED That plaintiffs' motion for summary judgment be and hereby is in all things granted, and that defendant's motion for summary judgment be and hereby is in all things denied.

IT IS FURTHER ORDERED That the Clerk enter judgment as follows:

IT IS ORDERED, ADJUDGED AND DECREED That the plaintiffs have and recover of defendant such amount as is determined at trial by the court to be the damages sustained by the plaintiffs.

### EXHIBIT A

### STIPULATION OF FACTS

The parties, through their undersigned counsel, hereby stipulate and agree that the following facts are not in dispute and may be considered by the Court in determining the cross motions for summary judgment.

1. Sometime prior to February 3, 1975, the plaintiffs, Stanley J. Hofbauer and Jean F. Hofbauer, entered into a purchase agreement for the purpose of purchasing certain real property located at 629–12th Avenue S.E., Rochester, Minnesota 55901.

2. On or about February 3, 1975, plaintiffs submitted through the Northwestern National Bank of Rochester, Minnesota, (hereinafter "Northwestern") an application for a Federal Housing Administration (hereinafter "FHA") insured loan for the purchase of said real property.

3. Thereafter, the FHA issued a loan commitment and appraisal.

4. The FHA did not indicate in the commitment papers or the appraisal that the property to be purchased by the Hofbauers was located in a special flood area and that flood insurance was required.

5. Northwestern's uncontradicted affidavit states that it relied on the FHA determination that flood insurance was not required on the subject property. Plaintiffs have no knowledge or information with regard to Northwestern's internal policy determinations.

6. Northwestern did not notify the plaintiffs that the property was in a special flood hazard area and did not require the plaintiffs to obtain flood insurance.

7. The plaintiffs secured an FHA secured loan from Northwestern in the amount of $17,300.00. The purchase of the residence located at 629–12th Avenue S.E., Rochester, Minnesota, was closed on or about March 10, 1975. Plaintiffs executed a promissory note in favor of Northwestern in the amount of $17,300.00 and a mortgage deed to secure the note.

8. At the time of the closing, plaintiffs' residence was located in a special flood hazard area.

9. The City of Rochester, Minnesota, has been participating in the National Flood Insurance Program since April 3, 1970.

10. A flood occurred in Rochester on July 5 and 6, 1978, which allegedly caused damage to the property in question.

11. The plaintiffs had no flood insurance in effect at the time the property was alleged damaged by flood waters.

The parties further stipulate and agree that the Court can consider all affidavits and other written materials previously submitted in support of the cross motions for summary judgment.