KENNETH R. WITTY *et al.*, Plaintiffs-Appellants, *v.* ARTHUR R. SCHRAMM *et al.*, Defendants-Appellees.

Third District   No. 78-109

Opinion filed July 27, 1978.

James S. Dixon and David L. Cover, both of Peoria, for appellants.

E. Wayne Clark, of Frings, Bagley & Atherton, of Pekin, for appellees.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This is an appeal from an order of the circuit court of Tazewell County which dismissed an action of the plaintiffs Witty against the defendants Schramm, Schimmelphenning and Tunis. The plaintiffs voluntarily dismissed an action which they had commenced against the defendant Kingdon & Naven, Inc. and hence this defendant is not involved in this appeal.

The plaintiffs brought an action against the defendants for both damages and rescission of a contract for the purchase of an unimproved parcel of land upon which the plaintiffs intended to erect a home. The plaintiffs alleged in their complaint as amended that after purchasing the property they excavated for a basement and footings for the intended home and that shortly thereafter water began bubbling and percolating to such an extent and in such a manner as to fill the entire excavated area. The plaintiffs alleged that the defendants as vendors of the parcel of land breached an implied warranty of fitness and habitability and that they were therefore entitled to damages and a rescission of the contract which they entered into for the purchase of the land.

The defendants filed a motion to dismiss the amended complaint of the plaintiffs on the grounds that it was ambiguous, that their action was barred by the statute of frauds, that there was a failure to comply with our Civil Practice Act (more specifically Ill. Rev. Stat. 1975, ch. 110, par. 36), that an action seeking relief in the form of both damages and rescission is inconsistent and improper and that there is no implied warranty of habitability as a matter of law as far as vacant lots are concerned. As we have previously stated, the trial court granted defendants' motion to dismiss and this appeal ensued.

It may well be that the amended complaint of the plaintiff should have been dismissed on the grounds of defective pleadings; however, we prefer to direct our attention to the paramount question as to whether or not an implied warranty of habitability applies to vacant lots of land so as to afford the purchasers of such lots relief for unplanned and uncontemplated expenses occasioned by unforeseen difficulties, *i.e.*, subsurface water, when the purchasers attempt to utilize the lots for building site purposes.

The plaintiffs cite a number of cases in support of their argument that an implied warranty of habitability applies to vacant lots. We quarrel not with the law as set forth in such cases, however, we see no need to set them forth in the opinion since none of them are applicable to the issues presented in this appeal in that all of them were concerned with defects in constructed or partially constructed residences.

We know of no cases which have determined the question as to whether an implied warranty of habitability exists as to vacant lots. The parties to this appeal have conceded that the question is one of first impression in our State. In order to determine the question we find helpful the reasoning set forth in the case of *Conyers v. Molloy* (1977), 50 Ill. App. 3d 17, 19, 364 N.E.2d 986, 988. In the case of *Conyers* the reviewing court stated:

> "Some of the reasons for the recognition of the warranty are set out in *Wawak v. Stewart* (1970), 247 Ark. 1093, 449 S.W.2d 922. That court stated that the contrast between the law of personal property and the law of real property is so great as to be indefensible. Why should a $10 iron have a warranty of fitness while the biggest purchase ever made by a majority of families, their home, is unprotected? The relationship of a mass producer-builder-seller and the purchaser is vastly different from the relationships from which the rule of *caveat emptor* arose. In the early days of the common law, the main concern of the parties was the land, and whatever structures were on it could be easily repaired by the new landholder. Today, the purpose is to buy a dwelling, rather than land per se, and most purchasers are not equipped to undertake major repairs. Like the buyer of an automobile, the purchaser of a house generally has neither the bargaining power to insist on a warranty nor the expertise to detect what could be wrong. Finally, but certainly not least, it seems only fair to put the burden of repairing defects in construction on the person who is (1) responsible for the defects, (2) is in a position to repair them and (3) is in a position to spread the costs of the repair. This is especially true since a significant amount of the defects can be so buried in the construction that it could be impossible to find them before buying, no matter how careful or thorough the inspection. In fact, the concensus is that there is no defensible reason why the warranty should not be recognized, save the argument that such change should be for the legislature. In view of the iniquities created by the judge-made rule of *caveat emptor*, that hardly seems an answer. As we earlier noted, the supreme court in *Little* changed the rule judicially in the landlord-tenant context. Consequently, we hold that an implied warranty of habitability in this context does exist and that a breach thereof is actionable." 50 Ill. App. 3d 17, 19, 364 N.E.2d 986, 988.

In examining the foregoing language as set forth in the *Conyers* case we note that in determining whether or not an implied warranty of habitability is to exist you determine whether someone is at "fault," you determine whether someone is "responsible" for the complained of

defect, and you further determine if someone is in the position to "repair" the defect. In the instant case that subsurface water was under the vacant lot purchased by the plaintiffs cannot be attributed as being the fault of anyone. Stated in another manner, it cannot be said that anyone is responsible for the presence of the subsurface water and it follows that the vendors not being at fault or responsible for the natural condition of subsurface water being present then they have no special knowledge of the complained of defect that would make it incumbent on them to repair or correct it.

It is abundantly clear to us that there is not and should not be applicable to a vacant lot of land an implied warrant of habitability. To hold otherwise could well lead to the opening of Pandora's box and the escape of the evils contained therein. Should a vendor of a vacant lot by implication be charged with warranting that there is no subsurface water, or that there is a certain amount of subsurface water, or that the soil is of a certain texture or consistency? We believe not, for what may be a defect in one instance may be a desirable feature or benefit in another.

The plaintiffs have made no allegations of fraud or misrepresentation. They purchased a lot in a subdivision, they made plans to build a home, they excavated dirt for a basement and encountered troublesome subsurface water. The problems encountered by the plaintiffs are not unique to them. The presence of water undoubtedly will result in additional expense to the plaintiffs, however, the defendants should not be placed in the position of having warranted to the plaintiffs that they would be able to erect and maintain a home free and immune from all problems.

We believe that there are compelling reasons why an implied warranty of habitability should not be applicable to a vacant lot of land and therefore the trial court's dismissal of count I of the plaintiffs' amended complaint is affirmed.

Affirmed.

BARRY, P. J., and STOUDER, J., concur.