

James J. Rowan, Howell & Hallgrimson, San Jose, Cal., for plaintiffs.

David M. Ivester, Washburn & Kemp, San Francisco, Cal., for defendant Great Western Sav.

Allen L. Martini, Ropers, Majeski, Kohn, Bently, Wagner & Kane, San Jose, Cal., for defendant Thunderbird Realty.

J. Stoffel, San Diego, Cal., for defendant Dave Garber.

Daniel Hanley, San Jose, Cal., for defendants.

**Alan BRILL, Harold Brill, and Helen Brill, Plaintiffs,**

v.

**NORTHERN CALIFORNIA SAVINGS AND LOAN ASSOCIATION, et al., Defendants.**

No. C–82–3137 RFP.

United States District Court, N.D. California.

Dec. 7, 1982.

## MEMORANDUM

PECKHAM, Chief Judge.

Plaintiffs seek recovery from their lender and an associated party for the flood destruction of property owned by plaintiffs. Defendants move to dismiss pursuant to F.R.C.P. 12(b)(6).

## STATEMENT OF FACTS

Plaintiffs Alan Brill, Harold Brill, and Helen Brill ("the Brills") purchased a residence at 117 Beth Drive, Felton, California, in December, 1979, at a price of $109,000. Defendant Northern California Savings provided first deed of trust financing in the

amount of $60,500. The sellers, Richard and Evelyn Jones, took back a note for $20,000 secured by second deed of trust. The balance of the purchase price was paid in cash.

In January, 1982, flooding occurred that severely damaged the property and rendered the residence uninhabitable. Plaintiffs estimate the damage at $80,000. They had no flood insurance.

Prior to the flood, the Brills had rented out a portion of the property. After the flood, the rental income was interrupted, and the Brills were unable to make payments on the two outstanding notes. The sellers' assignee has filed a Notice of Default and is threatening foreclosure. The complaint states that Northern California Savings has also threatened to foreclose.

Plaintiffs filed this action in June, 1982, seeking damages, injunctive and declaratory relief. The complaint named Northern California Savings, which has been succeeded through acquisition by Great Western Savings and Loan Association ("Great Western")[1] and Palo Alto Financial Corporation, trustee under the first trust deed, which has been succeeded by California Reconveyance Company.[2]

## LEGAL CLAIMS

Plaintiffs premise jurisdiction on 28 U.S.C. § 1331 and 42 U.S.C. §§ 4001 et seq., the National Flood Insurance Program ("NFIP"), which plaintiffs claim gives them a right to relief. Plaintiffs have also pleaded a state law claim of negligent misrepresentation against Great Western. Plaintiffs base their claim on two sections of the NFIP, 42 U.S.C. § 4012a(b) and 42 U.S.C. § 4104a. Section 4012a(b) directs federal agencies that oversee banks, savings and loan associations, and similar institutions to promulgate regulations prohibiting federally insured and regulated lenders from making loans on property located in flood hazard zones, unless such property is insured against flood damage to at least the principal balance of the loan for the term of the loan.[3] Section 4104a instructs the same agencies to require the lenders under their supervision to provide notification to prospective borrowers if property on which they are borrowing is located in a flood hazard zone.[4]

---

1. Although Northern California Savings was the lender at the time of the purchase transaction, all references in this Memorandum and Order will be to Great Western, the present defendant and moving party herein.

2. The complaint also named Richard C. and Evelyn L. Jones, the sellers; David L. Garber, assignee on the note to sellers; Professional Foreclosure Services, Inc., current trustee under the second deed of trust; J.C.P.-Engineers & Geologists, Inc.; James C. Pendergast, chief executive officer, sole stockholder, and an employee of J.C.P.; Merit-McBride, a realtor that represented the sellers in the transaction; Thunderbird Realty, the realtor that represented the Brills; and Anina Van Alstine, an employee of Thunderbird who acted as the Brills' agent. By stipulation, the action has been dismissed without prejudice as to all parties except Great Western and California Reconveyance.

3. Section 4012a(b) provides in full as follows: "(b) Each Federal instrumentality responsible for the supervision, approval, regulation, or insuring of banks, savings and loan associations, or similar institutions shall by regulation direct such institutions not to make, increase, extend, or renew after the expiration of sixty days following December 31, 1973, any loan secured by improved real estate or a mobile home located or to be located in an area that has been identified by the Secretary as an area having special flood hazards and in which flood insurance has been made available under this chapter, unless the building or mobile home and any personal property securing such loan is covered for the term of the loan by flood insurance in an amount at least equal to the outstanding principal balance of the loan or to the maximum limit of coverage made available with respect to the particular type of property under the chapter, whichever is less."

4. Section 4104a provides in full as follows: "Each Federal instrumentality responsible for the supervision, approval, regulation, or insuring of banks, savings and loan associations, or similar institutions shall by regulation require such institutions, as a condition of making, increasing, extending, or renewing (after the expiration of thirty days following August 22, 1974) any loan secured by improved real estate or a mobile home located or to be located in an area that has been identified by the Secretary under this chapter or Public Law 93–234 as an area having special flood hazards, to notify the purchaser or lessee (or obtain satisfactory as-

Plaintiffs argue that section 4012a(b) gives rise to a private right of action for damages that result from a lender's failure to require its borrowers to obtain flood insurance when they purchase property in a flood zone. They argue that section 4104a creates a private right of action for resulting damages against a lender who fails to notify purchasers that property they propose to buy is located in a flood zone. Plaintiffs negligent misrepresentation claim against Great Western is based on the allegation that the lender represented without reasonable grounds for so believing that the NFIP's flood insurance requirement did not apply to this case.

Great Western has moved to dismiss the action under Rule 12(b)(6), either for failure to state a claim upon which relief can be granted or for lack of subject matter jurisdiction in that no substantial federal question is presented. Great Western's failure to require the purchase of flood insurance on the property and its failure to notify the Brills that the property was in a flood zone must be assumed for purposes of this motion. The sole issue before the court on this motion is whether the NFIP sections relied on by the Brills create an implied private right of action.

## DISCUSSION

Several courts have addressed the issue of whether the NFIP creates any implied private right of action, and the results have not been uniform. Plaintiffs have provided the court with two district court opinions, *Adlesperger v. Eureka Federal Savings & Loan Ass'n,* Civ. 79–1360 (D.Kan. Feb. 4, 1981) (hereinafter cited as *Adlesperger*); *Hofbauer v. Northwestern National Bank of Rochester,* 547 F.Supp. 940 (D.Minn.1981) (hereinafter cited as *Hofbauer*), holding that sections 4012a(b) and 4104a do create an implied private right of action. Great Western cites several cases that reached the opposite conclusion. *Till v. Unifirst Federal Savings & Loan Ass'n,* 653 F.2d 152 (5th

Cir.1981) (hereinafter cited as *Till*); *Arvai v. First Federal Savings & Loan Ass'n,* 539 F.Supp. 921 (D.S.C.1982); *R.B.J. Apartments v. Gate City Savings & Loan Ass'n,* 315 N.W.2d 284 (N.D.1982); *Pippin v. Burkhalter,* 276 S.C. 438, 279 S.E.2d 603 (1981).

All of the decided cases and the parties here agree that the framework for analyzing whether a private right of action should be implied was established by the Supreme Court in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). The Court listed four relevant factors:

> First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted,"—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

*Id.* at 78, 95 S.Ct. at 2088 (citations omitted).

Great Western correctly points out that in cases since *Cort,* the Supreme Court has become more restrictive toward the implication of private rights of action. The listing of factors in *Cort* seemed to indicate that a strong showing of consistency with the underlying purposes of the legislation might compensate for a weaker showing of legislative intent. Under the later cases, it is clear that the issue is one of statutory construction: "The central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action. *Touche Ross & Co. v. Redington,* 442 U.S. 560, 575, 99 S.Ct. 2479, 2489, 61 L.Ed.2d 82 (1979). "[T]he factors specified in *Cort* remain the 'criteria through which

surances that the seller or lessor has notified the purchaser or lessee) of such special flood hazards, in writing, a reasonable period in ad-

vance of the signing of the purchase agreement, lease, or other documents involved in the transaction."

this intent could be discerned' [citation omitted]." *California v. Sierra Club*, 451 U.S. 287, 293, 101 S.Ct. 1775, 1779, 68 L.Ed.2d 101 (1981). The Court has stated, moreover, that the third and fourth *Cort* factors (consistency with legislative purpose and traditional state concern) "are only of relevance, if the first two factors [statute enacted for plaintiffs' *especial* benefit and indications of legislative intent] give indication of congressional intent to create the remedy. [citation omitted]" *Id.* at 298, 101 S.Ct. at 1781.

## A. *Especial Benefit*

The first *Cort* factor is whether the plaintiff is one of the class for whose *especial* benefit the statute was enacted (the Court supplied the emphasis in *Cort*). To determine whether the Brills fall into such a class with respect to sections 4012a(b) and 4104a, it is helpful to step back for an overview of the purposes and policies of the legislation.

The NFIP was enacted in 1968 to create a nationwide program of flood insurance for property owners in flood areas and to encourage sound local land use policies to minimize flood damage. The 1968 Act operated on a voluntary basis insofar as local communities' participation in the program was concerned. The 1973 amendments made participation virtually mandatory by cutting off (as of 6/1/75) federal assistance to any non-participating community for any flood-zone construction purposes. Administration of the NFIP was placed under HUD.

The 1968 and 1973 congressional findings and declaration of purpose reveal the concerns of Congress about flood zone losses and the dual solution of pooling the risk to existing flood zone development while discouraging further flood zone construction.[5]

---

**5.** § 4001 Congressional findings and declaration of purpose (1968)

(a) The Congress finds that (1) from time to time flood disasters have created personal hardships and economic distress which have required unforeseen disaster relief measures and have placed an increasing burden on the Nation's resources; (2) despite the installation of preventive and protective works and the adoption of other public programs designed to reduce losses caused by flood damage, these methods have not been sufficient to protect adequately against growing exposure to flood losses; (3) as a matter of national policy, a reasonable method of sharing the risk of flood losses is through a program of flood insurance which can complement and encourage preventive and protective measures;

(e) It is the further purpose of this chapter to (1) encourage State and local governments to make appropriate land use adjustments to constrict the development of land which is exposed to flood damage ... (2) guide the development of proposed future construction, where practicable, away from locations which are threatened by flood hazards, (3) encourage lending and credit institutions, as a matter of national policy, to assist in furthering the objectives of the flood insurance program ...

§ 4002 Additional Congressional findings and declaration of purpose (1973)

(a) The Congress finds that—

(1) annual losses throughout the Nation from floods and mudslides are increasing at an alarming rate, largely as a result of the accelerating development of, and concentration of population in, areas of flood and mudslide hazards;

(3) property acquired or constructed with grants or other Federal assistance may be exposed to risk of loss through floods, thus frustrating the purpose for which such assistance was intended;

(4) Federal instrumentalities insure or otherwise provide financial protection to banking and credit institutions whose assets include a substantial number of mortgage loans and other indebtedness secured by property exposed to loss and damage from floods and mudslides;

(5) the Nation cannot afford the tragic losses of life caused annually by flood occurrences nor the increasing losses of property by flood victims most of whom are still adequately compensated despite the provision of costly disaster relief benefits;

(b) The purpose of this Act, therefore, is to—

(1) substantially increase the limits of coverage authorized under the national flood insurance program;

(2) provide for expeditious identification of, and the dissemination of information concerning, flood-prone areas;

(3) require States or local communities, as a condition of future Federal financial assistance, to participate in the flood insurance program and to adopt adequate flood plain ordinances with effective enforcement provisions consistent with Federal standards to reduce or avoid future flood losses; and

(4) require the purchase of flood insurance by property owners who are being assisted by

While home purchasers obviously benefit from this program, Congress appears to have been moved at least as much by the impact of mounting flood relief costs on the federal treasury. *See Till, supra,* 653 F.2d at 158–59; H.R.Rep. No. 1585, 90th Cong., 2d Sess., *reprinted in* [1968] U.S.Code Cong. & Ad.News 2873, 2966–67; S.Rep. No. 93–583, 93d Cong., 1st Sess., *reprinted in* [1973] U.S.Code Cong. & Ad.News 3217, 3218–20, 3223. Section 4012a(b) mandates only enough insurance to cover the principal balance of loans by federally regulated and insured lenders. If intended to *especially* benefit flood zone property purchasers, NFIP is a rather oddly underinclusive statute; it ignores not only the customers of non-federally insured and regulated lenders but even the equity interest of the customers of federal lenders.

The Brills make a misconceived argument with respect to application of *especial* benefit in this case. They urge that one need not be the *sole* beneficiary to be within the class for whose especial benefit the statute was enacted. But the defendants do not dispute this. Rather, the argument is over how the Supreme Court has developed the meaning of "especial benefit."

Plaintiffs cite *Texas & Pacific R. Co. v. Rigsby,* 241 U.S. 33, 36 S.Ct. 482, 60 L.Ed. 874 (1916). In *Rigsby* the Court simply looked to see whether the statute benefited the class of which plaintiff was a member. The Supreme Court itself, however, has stated that the *Rigsby* approach is outmoded, with the development of comprehensive regulatory statutes. *Merrill Lynch, Pierce, Fenner & Smith v. Curran,* —— U.S. ——, 102 S.Ct. 1825, 1837–38, 72 L.Ed.2d 182 (1982). As the Court said in *California v. Sierra Club, supra,* "The question is not simply who would benefit from the Act, but whether Congress intended to confer federal rights upon those beneficiaries." 451 U.S. at 294, 101 S.Ct. at 1780.

In *Cannon v. University of Chicago,* 441 U.S. 677, 690 n. 13, 99 S.Ct. 1946, 1954 n. 13,

60 L.Ed.2d 560 (1979), the Court offered this helpful elucidation:

> [T]he right- or duty-creating language of the statute has generally been the most accurate indicator of the propriety of implication of a cause of action. With the exception of one case ... this Court has never refused to imply a cause of action where the language of the statute explicitly conferred a right directly on a class of persons that included the plaintiff in the case. (citations omitted)

Here, the sections in question cannot be said to confer any right "directly" on the plaintiffs. At most, section 4104a indirectly confers a right to be notified of a flood hazard through the mechanism of mandating federal regulators to issue regulations that require lending institutions to provide such notification. Similarly, the sections at issue impose no duties directly on lenders; the duties created by sections 4012a(b) and 4104a are imposed directly on federal agencies.

As a general matter, statutes directing action by federal agencies have usually been found not to create any implied private rights of action. *See, e.g., Universities Research Ass'n v. Coutu,* 450 U.S. 754, 101 S.Ct. 1451, 67 L.Ed.2d 662 (1981) (Statute requiring minimum wage stipulations to be placed in federal construction contracts created no private right for laborers); *Osborn v. American Ass'n of Retired Persons,* 660 F.2d 740 (9th Cir.1981) (Statute directing Secretary of Labor to withhold federal funds from enrolled employers not paying the statutory wage did not create private right of action for such employees); *Rogers v. Frito-Lay, Inc.,* 611 F.2d 1074 (5th Cir. 1980) (Section 503 of Rehabilitation Act requiring every federal contract in excess of $2,500 to have an affirmative action provision for handicapped persons created no private right of action); *Fisher v. City of Tucson,* 663 F.2d 861 (9th Cir.1981) (same).

Plaintiffs have cited no persuasive authority to support the contention that the

Federal programs or by federally supervised, regulated, or insured agencies or institutions in the acquisition or improvement of land or facil-

ities located or to be located in identified areas having special flood hazards.

.    .    .    .    .

NFIP "*especially* benefits" them, in the sense that the phrase has taken on since *Cort.* The *Adlesperger* case cited by plaintiffs rests in part on the general benefit to the plaintiffs' class; the previous discussion of *Rigsby* pointed out that this is no longer sufficient. Both the *Adlesperger* and *Hofbauer* courts thought that the notification language of 4104a created a right in purchasers (those opinions did not engage in any close analysis of the right created by 4012a). As the *Till* court points out, however, what legislative history there is for 4104a shows that the notification requirement was at least in part designed to discourage development in flood zones. *Till, supra,* at 159 & n. 16; *see* at 571–572.

## B. *Legislative Intent*

Assuming, *arguendo,* that either or both sections *did* create a *right* in the Brills, the recent cases from both the Supreme Court and the Ninth Circuit have made clear that a separate inquiry is needed into whether Congress intended a private remedy to enforce the right. *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 17–18, 100 S.Ct. 242, 246, 62 L.Ed.2d 146 (1979); *Universities Research Ass'n v. Coutu, supra,* 450 U.S. at 771, 101 S.Ct. at 1461; *Fisher v. City of Tucson, supra,* 663 F.2d at 864; *Miscellaneous Service Workers, Drivers & Helpers, Local 427 v. Philco-Ford Corp.,* 661 F.2d 776, 780 (9th Cir.1981).

In undertaking this inquiry, the Brills again seem to be burdened by a fundamental misconception. They state:

> [T]he issue to be decided is not solely whether Congress intended to provide a private cause of action, although Congress' intent is relevant, but whether such a private cause of action is "suggested by the context ... or required to accomplish Congress' purposes in enacting the statute." *Cort,* supra, [422 U.S. 66] at 69 [95 S.Ct. at 2084] (emphasis added). Second, the factors announced in *Cort* are just that, factors to be weighed, not conjunctive requirements.

Plaintiff's Opposition at 5.

The Ninth Circuit recently gave the following response to an argument that the policy of a statute would be served by the implication of a private right:

> Although it was once thought that appellate review in an implication case properly encompassed the question whether a private action was desirable as a matter of policy, the Supreme Court has recently emphasized that the attention of the reviewing court in such cases should be wholly centered on congressional intent. In other words, the *sole* factor to be considered in deciding whether a private right of action should be implied under a statute is whether Congress intended that the statute's provisions be enforced through private litigation.

*Osborn v. American Ass'n of Retired Persons, supra,* 660 F.2d at 742–43 (emphasis added) (citations omitted).

The legislative history is silent on the question of a private remedy under 4012a and 4104a. *Till, supra,* at 160. The Brills (as well as the two cases they rely on) point to the following remarks of Representative Jones, upon introducing the amendment that became the notification section, section 4104a:

> [Section 4104a] has to do with the development of commercial and private housing developments in flood plain areas, and these developments often add to the flood hazards in these areas. Many times it is a commercial development or a private housing development that is financed through the Federal Government, through FHA or SBA or some other program.
>
> Then when the flood happens and damage results, the Federal Government is called upon again to help those who were the victims.
>
> What this amendment does in essence is to say to a purchaser of property in a flood hazard area, as defined under the Flood Insurance Act which we passed this year, that before he can receive his loan the lender has to notify him in writing within a reasonable period of time before closing that the purchaser is in fact in a flood zone area, and it requires that satis-

factory assurances be given by the seller or lessor that they have notified the purchaser or lessee.

Mr. Chairman, it just seems to make sense. We are extending the truth in lending concept in this special area to make sure that before development occurs in a flood plain area notification be given.

120 Cong.Rec. 20308 (Remarks of Rep. Jones).

The Brills make the claim that the reference to the "truth in lending concept" shows that "Representative Jones clearly had in mind furthering the protection of the borrower and providing a means of redress when the truth is not told." Plaintiff's Opposition at 16:18–20. Despite plaintiffs' contention, the somewhat ambiguous statement of single legislator hardly establishes a congressional intent to allow a private right of action.

The Brills try to construe the congressional silence as favorably as possible by quoting language of the Supreme Court to the effect that such silence may be consistent with the intent to allow a private right of action:

> [T]he legislative history of a statute that does not expressly create or deny a private remedy will typically be equally silent or ambiguous on the question. Therefore, in situations such as the present one in which it is clear that federal law has granted a class of persons certain rights, it is not necessary to show an intention to create a private cause of action, although an explicit purpose to deny such a cause of action would be controlling.

Cannon v. University of Chicago, supra, 441 U.S. at 694, 99 S.Ct. at 1956 (citations omitted). The next sentence in Cannon, not quoted by plaintiffs, reads, "But this is not the typical case." Id. Indeed, it was not. Cannon involved the construction of Title IX language that tracked the language of Title VI of the Civil Rights Act of 1964, with a legislative history that strongly indicated congressional intent to allow a private

right of action. A more complete summary of the Supreme Court's holdings with respect to legislative silence and what it means was provided by the Ninth Circuit in the Osborn case:

> Although congressional silence is not necessarily fatal to implication of a private right of action, "implying a private right of action on the basis of congressional silence is a hazardous enterprise at best." Thus, a private right of action should be implied in the face of a silent legislative record only when there exists other significant evidence—based on, e.g., the language of the statute, its overall structure, or the circumstances of its passage—that Congress intended to create such an action. However, when, as here, the language of the statute in question does not itself provide evidence favoring implication, a silent legislative history obviates the need to inquire further into congressional intent. In such cases, "[t]he question whether Congress ... intended to create a private right of action, has been definitely answered in the negative.

Osborn v. American Ass'n of Retired Persons, supra, 660 F.2d at 745 (citations omitted).

If the silence of Congress is deafening in the present case, the other possible evidence of legislative intent referred to in Osborn does nothing to assist the Brills, and, in fact, the structure of the Act is positively devastating to their argument. The Brills and the two cases they rely on virtually ignore the administrative enforcement mechanism for sections 4012a(b) and 4104a. The Federal Home Loan Board, for example, the supervising agency for defendant, has issued implementing regulations, 12 C.F.R. § 523.29(b) & (e), and has extensive powers to enforce them under 12 U.S.C. § 1464(d), including, inter alia, the powers to issue cease and desist orders, § 1464(d)(2)(A), to terminate unsafe or unsound practices, § 1464(d)(4), and to impose administrative remedies including monetary penalties, § 1464(d)(8)(B).[6] The failure of

---

**6.** See also the general command of section 4128, which provides in full as follows: "(a)

the *Adlesperger* and *Hofbrauer* courts to discuss the significance of administrative enforcement to their analysis of implied rights is inexplicable; hence, their conclusion—that the "rights" provided to borrowers by 4012a(b) and 4104a are without an express remedy and therefore require implication of a remedy—cannot stand.

### C. *Legislative Purpose*

The Brills address a substantial portion of their discussion to the third *Cort* factor, arguing that implication of a private remedy would serve the underlying legislative policy by preventing violations of the regulations mandated under sections 4012a(b) and 4104a. The Supreme Court rejected a very similar argument in *Touche Ross & Co. v. Redington, supra.* After finding that plaintiffs had failed to establish under the first two *Cort* factors a congressional intent to create an implied private right of action under section 17(a) of the Securities Exchange Act, the Court refused to treat the four *Cort* factors as independent of each other and refused to heed the argument that a private right of action was "necessary to effectuate the purpose of the section." 442 U.S. at 575, 99 S.Ct. at 2489. Instead, the Court stated, in terms very pertinent to the present case,

> Certainly the mere fact that § 17(a) was designed to provide protection for brokers' customers does not require the implication of a private damages action in their behalf.... The ultimate question is one of congressional intent, not one of whether this Court thinks it can improve upon the statutory scheme that Congress enacted into law.

442 U.S. at 578, 99 S.Ct. at 2490 (citations omitted).

The Secretary is authorized to issue such regulations as may be necessary to carry out the purpose of this Act.

  (b) The head of each Federal agency that administers a program of financial assistance relating to the acquisition, construction, reconstruction, repair, or improvement of publicly or privately owned land or facilities, and each

### CONCLUSION

The Brills have failed to establish the requisite congressional intent to allow a private right of action for damages under the NFIP, and their federal claims must, therefore, be dismissed. Having disposed of plaintiffs' federal claims early in the action, this court, in the exercise of its discretion, hereby dismisses without prejudice the pendent state claim as well. *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

SO ORDERED.

Federal instrumentality responsible for the supervision, approval, regulation, or insuring of banks, savings and loan associations, or similar institutions, shall, in cooperation with the Secretary, issue appropriate rules and regulations to govern the carrying out of the agency's responsibilities under this Act."