MARK A. LEHMANN *et al.*, Plaintiffs-Appellants, v. DAVID B. ARNOLD *et al.*, Defendants (Gene Bateman *et al.*, Defendants-Appellees).

Fourth District   No. 4—84—0667

Opinion filed October 7, 1985.

TRAPP, J., concurring in part and dissenting in part.

Jeffrey W. Tock, of Phebus, Tummelson, Bryan & Knox, of Urbana, for appellants.

Ray Moss, of Ray Moss & Associates, of Clinton, for appellee Bloomington Federal Savings & Loan Association.

Michael J. Tague, of Franklin, Flynn & Palmer, of Champaign, for other appellees.

JUSTICE McCULLOUGH delivered the opinion of the court:

The plaintiffs, Mark and Julie Lehmann, brought this suit for damages caused by the periodic flooding of their home. Two counts were directed against Gene and Leslie Bateman, the developers of the subdivision in which the house lies. One count alleged a breach of an implied warranty of habitability, and the other asserted the Batemans had negligently failed to comply with section 13 of "An Act to revise the law in relation to recorders" (Ill. Rev. Stat. 1983, ch. 115, par. 13). The trial court granted the Batemans' motion for summary judgment on both counts. The plaintiffs also brought a negligence count and a breach of contract count against Bloomington Federal Savings & Loan (BFS&L), from which the plaintiffs had borrowed funds to

purchase their home. They alleged BFS&L had failed to comply with provisions of the National Flood Insurance Act of 1968 (42 U.S.C. sec. 4001 *et seq.* (1982)) and a regulation enacted under it. The trial court granted BFS&L's motion to dismiss both counts.

The Batemans subdivided vacant property which they owned, and filed a plat of the subdivision on April 4, 1974, and again on June 3, 1977. They sold the unimproved land to David Arnold. Arnold built houses on the property, and in November 1978, he sold one of these houses to the plaintiffs. The plaintiffs secured a mortgage from BFS&L. As part of the loan process, BFS&L had the property appraised. The appraisal indicated that the land is located in a flood hazard area, but the plaintiffs were never informed of this.

Two creeks meet on the east side of the plaintiffs' land. When the plaintiffs bought the property, both creeks were dry. In March 1979, heavy rains caused the creeks to overflow their banks and surround the house with water. Between 12 and 19 inches of water seeped into the plaintiffs' basement. The flooding occurred again in the summer of 1979 and three times in 1981. The basement was unfinished when the plaintiffs purchased their home. They intended to build a bedroom, bathroom, and recreation room, and they had drywalled the basement. Due to the flooding, the basement was never finished. In addition, the flooding undermined the plaintiffs' driveway and sidewalk.

Following the flooding in 1981, the plaintiffs investigated the cause and discovered their house was located in a flood hazard area. On December 13, 1982, they filed suit against the Batemans, Arnold, BFS&L and Vail Moore, the surveyor who had subdivided the land for the Batemans. The plaintiffs sought recovery for the inhabitability of the basement, the damage to the drywall, sidewalk and driveway, and the decrease in the value of their home. The plaintiffs later amended their complaint to add the Piatt County recorder as a defendant. The counts brought against Arnold were dismissed after he was discharged in bankruptcy. The counts against Moore and the recorder were also dismissed, and this appeal does not concern them. The Batemans moved for summary judgment on the grounds that the implied warranty of habitability applied only to builder-vendors and that the plaintiffs sought recovery for economic loss in tort. The Batemans also maintained the plaintiffs had failed to bring suit within the applicable statute of limitations. BFS&L moved to dismiss, alleging that the Federal statutes and regulation did not create any duty on its part. The trial court granted both motions.

## I

The Batemans contend the trial court properly granted summary judgment in their favor because the plaintiffs failed to bring suit within two years of the 1979 flooding. They argue the following statute applies:

"Actions based upon tort, contract or otherwise against any person for an act or omission of such person in the design, planning, supervision, observation or management of construction, or construction of an improvement to real property shall be commenced within 2 years from the time the person bringing an action, or his or her privity, knew or should reasonably have known of such act or omission." Ill. Rev. Stat. 1983, ch., 110, par. 13—214(a).

The Batemans maintain section 13—214(a) applies because the plaintiffs' complaint alleges that they negligently planned and designed the subdivision. In *C. S. Johnson Co. v. Champaign National Bank* (1984), 126 Ill. App. 3d 508, 467 N.E.2d 363, we examined the legislative history of section 13—214(a) and determined it was enacted for the benefit of professionals associated with construction activities on real property such as architects, engineers, and contractors. The Batemans are not such professionals, and they have presented no evidence or argument that they, in fact, designed, planned, supervised, observed, or managed any construction on the property. As in *C. S. Johnson,* the mere allegation in the plaintiffs' complaint that the Batemans subdivided or developed the land is insufficient to render section 13—214(a) applicable.

## II

The Batemans argue no implied warranty of habitability exists between a developer who provides unimproved land for construction of a new home and the purchaser of the home. Our supreme court first recognized an implied warranty of habitability for new homes in *Petersen v. Hubschman Construction Co.* (1979), 76 Ill. 2d 31, 389 N.E.2d 1154. The court decided the purchaser generally cannot make a meaningful inspection of the home and, therefore, must rely on the skill and integrity of the builder-vendor. As a matter of public policy, the court decided the warranty extends to latent defects which interfere with the vendee's expectations that the house is reasonably suited for its intended use. 76 Ill. 2d 31, 42, 389 N.E.2d 1154, 1158.

The plaintiffs assert the land, which the Batemans provided, is defective because their basement floods. They contend a defect in the land on which a house is built is no different than defects in other ma-

terials used in construction. They rely on *Briarcliffe West Townhouse Owners Association v. Wiseman Construction Co.* (1983), 118 Ill. App. 3d 163, 454 N.E.2d 363. In *Briarcliffe,* a homeowners' association, which held title to common land in a planned unit development, brought an implied warranty action against the developer, who had sold townhouses to association members. The complaint alleged the developer had designed and fashioned the topography of the common land, but the land retained storm water resulting in serious damage. The court refused to accept the developer's argument that the warranty did not extend to vacant land. The court noted latent defects in the common land could affect the habitability of the townhouses. The court found no real distinction between defects in the buildings and defects in the land because in either case, the purchaser must rely on the expertise of the builder-vendor. 118 Ill. App. 3d 163, 167, 454 N.E.2d 363, 365.

■ We agree that a builder-vendor who sells a new house and lot in a package sale should be liable not only for structural defects but also for the unsuitability of the site on which the house is built. (*Hesson v. Walmsley Construction Co.* (Fla App. 1982), 422 So. 2d 943.) The plaintiffs ask us to extend liability on an implied warranty of habitability beyond the builder of a new home to one who sells the land to the builder. The Batemans maintain there should be no implied warranty associated with the sale of unimproved land. They cite *Witty v. Schramm* (1978), 62 Ill. App. 3d 185, 379 N.E.2d 333, in which the plaintiffs purchased a vacant lot in a subdivision from the defendant. The plaintiffs, who had planned to build a home, excavated for a basement and encountered problems with subsurface waters. The court held there was no implied warranty of habitability applicable to the sale of unimproved land. The court reasoned that a seller of vacant land should not be placed in the position of having warranted to the buyers that they would be able to erect and maintain a home free from all problems.

In *Kramp v. Showcase Builders* (1981), 97 Ill. App. 3d 17, 422 N.E.2d 958, new-home purchasers sued the developers of the subdivision as well as the builder for breach of the implied warranty of habitability. The plaintiffs alleged soil conditions in the subdivision were inadequate for installation and operation of their septic systems. The developers relied on *Witty* and argued there is no warranty of habitability for vacant land. The court decided *Witty* did not control its decision. The court believed the warranty did protect purchasers from defects arising out of soil conditions. The court, however, went on to note that no case had extended the warranty beyond the builder-ven-

dor to vendee relationship. Because such a relationship did not exist between the developer and the plaintiffs, the court decided the developer could not be held liable under an implied warranty of habitability.

*Kramp* was decided before *Redarowicz v. Ohlendorf* (1982), 92 Ill. 2d 171, 441 N.E.2d 324. In *Redarowicz,* the supreme court extended the warranty of habitability to allow subsequent purchasers of the home to recover for latent defects which manifest themselves within a reasonable time after the purchase. The court decided that while the warranty has its roots in the execution of the contract for sale, it exists independently, and privity is not required. The court stated:

"Like the initial purchaser, the subsequent purchaser has little opportunity to inspect the construction methods used in building the home. Like the initial purchaser, the subsequent purchaser is usually not knowledgeable in construction practices and must, to a substantial degree, rely upon the expertise of the person who built the home." 92 Ill. 2d 171, 183, 441 N.E.2d 324, 330.

The plaintiffs conclude the *Kramp* court would not allow recovery from the seller of unimproved land for the inhabitability of a home later built on that land because *Redarowicz* eliminated any privity requirement. While *Redarowicz* expanded the class of possible plaintiffs who can bring an implied warranty action, the opinion does not suggest the class of possible defendants should be expanded beyond the builder-vendor. The reason for the extension in *Redarowicz* does not support the extension that the plaintiffs urge. A subsequent purchaser must rely on the expertise of the builder, because that purchaser cannot make a meaningful inspection and cannot rely on the initial purchaser. A purchaser, however, need not and does not rely on any expertise of the seller of the land. Instead, he relies on the builder's skill to insure that the home built on the property will be habitable. Moreover, it would be unfair to impose a warranty of habitability on the seller of unimproved land for a house that has not yet been built. As between the seller and the builder, the doctrine of *caveat emptor* should apply. To impose a later warranty in favor of the purchaser of the house would require the seller of land to control the actions of the builder. The habitability of a new home will still be determined by the type and quality of construction despite any defects in the land.

The plaintiffs request an extension in this case because they have no recourse against the builder. A similar argument was accepted in *Minton v. The Richards Group* (1983), 116 Ill. App. 3d 852, 452 N.E.2d 835. The *Minton* court held a subcontractor liable for a breach of an implied warranty of habitability where the purchaser of a new

home sustained a loss due to a latent defect caused by the subcontractor and where the purchaser had no recourse against the builder. In so ruling, the court simply cited *Redarowicz* for the proposition that the warranty's purpose is to protect innocent purchasers. If a subcontractor impliedly warrants his work to the purchaser, however, then his liability should be independent of the builder's solvency. We cannot concur in the view that plaintiffs must have a warranty action against someone other than the builder simply because the builder went bankrupt.

### III

The plaintiffs based their negligence count against the Batemans on statute, which states, in part:

"[N]or shall any person offer or present for recording or record any map, plat or subdivision of lands, any part of which as shown on the map, plat or subdivision is situated within 500 feet of any surface drain or watercourse serving a tributary area of 640 acres or more, until such map, plat or subdivision of lands has been reviewed by the Department of Transportation either independently or in cooperation with Federal, State or local agencies, for the purpose of determining, for the protection of persons and property, the flood hazards involved, and a report thereon filed by that Department with the recorder ***. Any person who records, or who offers or presents for recording, which offer or presentation results in a recording of, any map, plat or subdivision of land which he knows to be in violation of this Section shall pay to the county the sum of $200, to be recovered in the circuit court, in the name of the state, for the use of the county, with costs of suit." (Ill. Rev. Stat. 1983, ch. 115, par. 13.)

The plaintiffs alleged the creeks near their home served a tributary area of more than 640 acres.

■ The Batemans argue the statute did not create a duty in favor of the plaintiffs. They contend the penalty for a knowing violation of the statute is exclusive. They, therefore, conclude the statue cannot be the basis of a civil cause of action. Although an act is penal in nature, that in itself does not bar a civil remedy. When a statute is enacted for the protection of a particular class of individuals, a violation of its terms may result in civil as well as criminal liability, even though the former remedy is not specifically mentioned therein. (*Heimgaertner v. Benjamin Electric Manufacturing Co.* (1955), 6 Ill. 2d 152, 155, 128 N.E.2d 691, 693.) The imposition of a small fine inur-

ing to the State does nothing to protect persons or property from the dangers of flood hazards. Furthermore, it is conceivable that a developer would risk the threat of criminal sanctions in order to escape his responsibility under this statute. *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 185, 384 N.E.2d 353, 359.

■ The court in *Sherman v. Field Clinic* (1979), 74 Ill. App. 3d 21, 392 N.E.2d 154, listed five factors which are usually considered in determining whether a civil cause of action exists under a statute. (74 Ill. App. 3d 21, 29-30, 392 N.E.2d 154, 161; see also Restatement (Second) of Torts sec. 874, comment *h*, at 308-10 (1977).) The first factor is whether such a cause of action would further the policy behind the statute. The purpose of section 13 is to inform persons of flood hazards so that measures can be taken to protect them and their property. Holding developers civilly liable for their failure to provide such information would further this policy. In addition, the plaintiffs must be within the class intended to be protected by the statute. The ultimate purchasers of the property are within the group that section 13 seeks to inform. Next, the injury suffered must be within the range of injuries which the statute seeks to prevent. As the plaintiffs have suffered a loss due to unknown flood hazards, this requirement has been met. The fourth factor is the need for a civil remedy. As previously indicated, the fine alone is not sufficient. Without a civil remedy, there would be no incentive for injured purchasers to have the public record corrected to reflect the potential flood hazards. Finally, nothing in the Act itself demonstrates an intent to limit the remedies available.

Our conclusion is consistent with other authorities that hold statutes requiring information to be filed for public record, particularly those which require it to be published after filing, create a duty to members of the public for whose benefit the statute was created. (Prosser, Torts sec. 107, at 709 (4th ed. 1971).) The liability of one under a public duty to provide information extends to any loss suffered by the class of persons for whose benefit the duty is created, in any transaction in which it is intended to protect them. Restatement (Second) of Torts sec. 552 (1977).

The Batemans maintain the plaintiffs cannot recover their damages in tort even if the statute does create a duty. In *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 435 N.E.2d 443, the supreme court decided there could be no recovery in tort for damages caused by a defective product "[w]hen the defect is of a qualitative nature and the harm relates to the consumer's expectation that a product is of a particular quality so that it is fit for ordinary

use \*\*\*." (91 Ill. 2d 69, 88, 435 N.E.2d 443, 451.) The court defined this harm, which relates solely to a consumer's commercial expectation, as economic loss.

In *Redarowicz,* the court applied *Moorman* to prevent a negligence action for economic loss due to latent construction defects in a house. The court decided:

> "To recover in negligence there must be a showing of harm above and beyond disappointed expectations. A buyer's desire to enjoy the benefit of his bargain is not an interest that tort law traditionally protects." (*Redarowicz v. Ohlendorf* (1982), 92 Ill. 2d 171, 177, 441 N.E.2d 324, 327.)

The Batemans contend that, as in *Redarowicz,* the only danger to the plaintiffs is that they will be forced to incur additional expenses for living conditions that were less than what they bargained for. 92 Ill. 2d 171, 178, 441 N.E.2d 324, 327.

We do not believe *Moorman* controls the decision in this case. In *Rozny v. Marnul* (1969), 43 Ill. 2d 54, 250 N.E.2d 656, the court allowed recovery for economic loss under a negligent misrepresentation theory. In *Rozny,* the plaintiffs purchased a house and lot which was described in an admittedly inaccurate survey prepared for the real estate developer. In permitting recovery, the court noted six factors: (1) an express, unrestricted, and wholly voluntary "absolute guarantee for accuracy" appearing on the face of the inaccurate plat; (2) the defendant's knowledge that the plat would be used and relied on by persons other than the one ordering it, including the plaintiffs; (3) the fact that potential liability would be restricted to a comparatively small group and, ordinarily, only one member of the group would suffer a loss; (4) the absence of proof that a corrected plat was delivered to anyone; (5) the undesirability of requiring an innocent, reliant party to carry the burden of a surveyor's professional mistake; and (6) the recovery by the reliant user would promote cautionary techniques among surveyors. (43 Ill. 2d 54, 67-68, 250 N.E.2d 656, 663.) The *Moorman* court discussed *Rozny* but declined to overrule it. This left open the possibility of recovery for economic loss caused by negligent misrepresentations. *Grass v. Homann* (1984), 130 Ill. App. 3d 874, 878, 474 N.E.2d 711, 714; *Black, Jackson & Simmons Insurance Brokerage, Inc. v. International Business Machines Corp.* (1982), 109 Ill. App. 3d 132, 134, 440 N.E.2d 282, 283-84.

■ The tort of negligent misrepresentation involves a breach of the duty to use due care in obtaining and communicating information upon which others may reasonably be expected to rely in the conduct of their economic affairs. (*United States v. Neustadt* (1961), 366 U.S.

696, 6 L. Ed. 2d 614, 81 S. Ct. 1294.) A misrepresentation can result from the failure to provide adequate information when there is a duty to provide such information as well as providing information which is false. (*Leaf v. United States* (9th Cir. 1981), 661 F.2d 740, 742; *Ingham v. Eastern Air Lines, Inc.* (2d Cir. 1967), 373 F.2d 227, 239.) A negligent misrepresentation is a representation that the maker believes to be true, but because of negligent expression, is in fact false. (*Luciani v. Bestor* (1982), 106 Ill. App. 3d 878, 888, 436 N.E.2d 251, 259.) As discussed in *Rozny,* the plaintiff's reliance must be more than merely foreseeable. Statutes requiring information to be filed for public record, however, may considerably expand the class of persons whom a defendant has special reason to expect his representation to reach. (Prosser, *Misrepresentation & Third Persons,* 19 Vand. L. Rev. 231, 250 (1966).) Most of the factors supporting recovery in *Rozny* are also present here. Although the Batemans' plat did not contain a guarantee of accuracy as in *Rozny,* the fact that the information was filed for public record amounts to such a guarantee. More than the plaintiffs' disappointed commercial expectations is at stake. The need for accurate public records, as well as the policy behind section 13 itself, favors recovery in this case.

## IV

■ Section 4102(b) of the National Flood Insurance Act of 1968 requires Federal agencies responsible for regulation of lending institutions to direct federally insured lenders not to make loans secured by improved real estate in areas identified as flood zones unless the property is covered for the term of the loan by flood insurance in an amount equal to the outstanding principal balance of the loan. (42 U.S.C. sec. 4102(b) (1982).) Section 4104(a) further directs the same agencies to require federally insured lenders, as a condition of making the loan, to notify borrowers of flood hazards, in writing, a reasonable period in advance of the signing of the purchase agreement. (42 U.S.C. sec. 4104(a) (1982).) Pursuant to this statute, the Federal Home Loan Bank Board enacted a regulation requiring members making loans in flood hazard areas to notify borrowers of the hazards at least 10 days before the closing and to inform the borrower whether Federal disaster relief assistance would be available in the event of a flood. 12 C.F.R. sec. 523.29(e) (1985).

The plaintiffs brought a negligence action against BFS&L for failure to comply with the statutes and regulations. The Act is as much a part of the law and policy of this State as are the laws enacted by our own legislature. (*Boyer v. Atchison, Topeka & Sante Fe*

*Ry. Co.* (1967), 38 Ill. 2d 31, 230 N.E.2d 173.) The plaintiffs also asserted an action for breach of contract. Generally, the law existing at the time and place of the making of a contract is deemed a part of the contract as though expressly referred to or incorporated in it. *Schiro v. W. E. Gould & Co.* (1960), 18 Ill. 2d 538, 165 N.E.2d 286.

The issue is whether the plaintiffs can maintain an action for damages due to BFS&L's failure to comply with the Act and regulation. Applying the test announced in *Cort v. Ash* (1975), 422 U.S. 66, 45 L. Ed. 2d 26, 95 S. Ct. 2080, the Federal courts have consistently held the Act does not create a cause of action in favor of the borrower. (*Mid-America National Bank v. First Savings & Loan Association* (7th Cir. 1984), 737 F.2d 638; *Hofbauer v. Northwestern National Bank* (8th Cir. 1983), 700 F.2d 1197; *Till v. Unifirst Federal Savings & Loan Association* (5th Cir. 1981), 653 F.2d 152; *Arvai v. First Federal Savings & Loan Association* (D. S.C. 1982), 539 F. Supp. 921, *aff'd* (4th Cir. 1983), 698 F.2d 683; *Brill v. Northern California Savings & Loan Association* (N.D. Cal. 1982), 555 F. Supp. 566.) In addition, two State courts have refused to recognize a private cause of action under the provisions of the Act. *R.B.J. Apartments, Inc. v. Gate City Savings & Loan Association* (N.D. 1982), 315 N.W.2d 284; *Pippin v. Burkhalter* (S.C. 1981), 279 S.E.2d 603.

The courts have determined the principal purpose of the Act is to reduce the massive burden on the Federal treasury due to the escalating cost of flood disaster assistance. (*Mid-America National Bank v. First Savings & Loan Association* (7th Cir. 1984), 737 F.2d 638, 642; *Till v. Unifirst Federal Savings & Loan Association* (5th Cir. 1981), 653 F.2d 152, 159.) The provisions of the Act at issue are designed to protect a class of loans supervised, approved, regulated, or insured by the Federal government. (*Pippin v. Burkhalter* (S.C. 1981), 279 S.E.2d 603, 604.) Borrowers are not the primary beneficiaries of the statutes (*Till v. Unifirst Federal Savings & Loan Association* (5th Cir. 1981), 653 F.2d 152, 159; *Brill v. Northern California Savings & Loan Association* (N.D. Cal. 1982), 555 F. Supp. 566, 570); they are only incidentally or secondarily benefited (*Arvai v. First Federal Savings & Loan Association* (D. S.C. 1982), 539 F. Supp. 921, 924). The courts have uniformly concluded that borrowers are not members of the class for whose *especial* benefit these statutes were enacted. Under Federal law as announced in *Cort,* therefore, borrowers cannot maintain a private cause of action.

The plaintiffs urge us to recognize a State cause of action for violation of the Act. Whether a State-based claim exists under the

Federal statutes is a matter of State law. (*Hofbauer v. Northwestern National Bank* (8th Cir. 1983), 700 F.2d 1197, 1201; *Till v. Unifirst Federal Savings & Loan Association* (5th Cir. 1981), 653 F.2d 152, 161.) The plaintiffs contend the requirements for recognition of a private cause of action are more stringent under Federal law than under Illinois law. In either case, however, the issue ultimately depends upon the intent of the legislature which enacted the statute. See *Sheehan v. Janesville Auto Transport* (1981), 102 Ill. App. 3d 507, 430 N.E.2d 131, and *California v. Sierra Club* (1981), 451 U.S. 287, 68 L.Ed. 2d 101, 101 S. Ct. 1775.

The plaintiffs note at least two Federal courts have indicated borrowers are members of a class for whom the statutes were enacted. (*Hofbauer v. Northwestern National Bank* (8th Cir. 1983), 700 F.2d 1197, 1200; *Till v. Unifirst Federal Savings & Loan Association* (5th Cir. 1981), 653 F.2d 152, 159.) We cannot agree, however, with the plaintiffs' position that Congress intended to benefit borrowers at the expense of lenders. The courts have noted the plain language of the Act evinces a greater concern for lenders than for borrowers. *Till v. Unifirst Federal Savings & Loan Association* (5th Cir. 1981), 653 F.2d 152, 159; *R.B.J. Apartments, Inc. v. Gate City Savings & Loan Association* (N.D. 1982), 315 N.W.2d 284, 288.

The same factors which favored finding a cause of action under the Illinois statute militate against finding one under the Federal statutes and regulation. The policy of protecting the Federal treasury would not be furthered by holding federally insured lenders liable under the Act. (*Till v. Unifirst Federal Savings & Loan Association* (5th Cir. 1981), 653 F.2d 152, 160.) The statutes themselves do not directly confer any benefit on borrowers, nor do they directly impose any burden on lenders. The statutes, along with the regulation, are part of a comprehensive administrative scheme. The proper Federal agency has authority to issue cease and desist orders against bank officials, terminate unsound practices, impose administrative remedies including penalties, and require affirmative action to prevent or correct violations. The existence of such supervisory and enforcement authority at the administrative level strongly suggests no broad private remedies were intended. (*Mid-America National Bank v. First Savings & Loan Association* (7th Cir. 1984), 737 F.2d 638, 642.) Furthermore, Congress expressly provided for private rights of action under other provisions of the Act. (*Till v. Unifirst Federal Savings & Loan Association* (5th Cir. 1981), 653 F.2d 152, 160.) Congress balanced the competing interests of borrowers, lenders, and the government through the use of an adminis-

trative agency. Recognizing either a contract or negligence action under the Act might upset this balance. Deference to Congress and principles of federalism preclude us from finding any cause of action under the statutes. *R.B.J. Apartments, Inc. v. Gate City Savings & Loan Association* (N.D. 1982), 315 N.W.2d 284, 290.

For these reasons, that part of the trial court's order granting the Batemans' motion on the implied warranty of habitability count and the order granting BFS&L's motion to dismiss are affirmed. The order granting the Batemans' motion with respect to the negligence count is reversed, and the cause is remanded for further proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded.

MORTHLAND, J., concurs.

JUSTICE TRAPP, concurring in part and dissenting in part:

I concur in the disposition reached by the majority opinion but dissent therefrom insofar as the majority accepts the argument of the Batemans that the plaintiffs only suffered economic loss.

The majority then proceed to create an hypothesis of liability upon a theory of negligent misrepresentation grounded upon *Rozny*. This step is unnecessary.

The statute concerning plats expressly states that it is "[f]or the protection of persons and property, the flood hazards involved ***." It seems patent that the damage caused by the flooding of the residence constituted physical, traumatic damage arising from sudden or dangerous occurrences recoverable in tort, rather than an economic loss arising from general deterioration, wear and tear or internal breakdown of the premises resulting in damages recoverable only in a contract action. *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 86, 435 N.E.2d 443, 450.