**R. B. J. APARTMENTS, INC.,**
**Plaintiff and Appellant,**

v.

**GATE CITY SAVINGS & LOAN ASSO-CIATION, Defendant and Appellee.**

Civ. No. 10052.

Supreme Court of North Dakota.

Jan. 21, 1982.

Pearson & Christensen, Grand Forks, for plaintiff and appellant; argued by Douglas A. Christensen, Grand Forks.

Pancratz, Kruger, Wold, Yuill & Johnson, Fargo, for defendant and appellee; argued by J. Philip Johnson, Fargo.

PEDERSON, Justice.

This appeal presents one principal issue:

Is there an implied private right of action for damages against a federally insured savings and loan association for failure to comply with federal flood insurance laws?

We conclude that the federal flood insurance statutes imply no private right of action cognizable in federal law; nor do they establish the appropriate standard of conduct for a common-law negligence action. The judgment is affirmed.

R. B. J. Apartments, Inc. (R. B. J.), is the owner of a large apartment complex in Grand Forks. The complex is located near the drainage area known as the English Coulee. To complete this development, R. B. J. obtained a mortgage construction loan from Gate City Savings and Loan Association, (hereinafter Gate City) in July, 1977 in the amount of $2,200,000. This was later augmented by a second loan in February of 1979 in the amount of $800,000. In April of 1979, serious spring flooding occurred in the Grand Forks area. The R. B. J. apartment complex was damaged by flood waters coming through the English Coulee. R. B. J.'s losses were not covered by flood insurance. R. B. J. then sued Gate City, alleging that

the approximate cause of its damage was Gate City's failure to comply with the statutory requirements of the federal flood insurance program which prevent loans to borrowers who do not carry flood insurance.

Although the federal statutes do not provide injured borrowers an express cause of action, R. B. J. contends that a right to recovery is implicit in 42 U.S.C. §§ 4104a and 4012a(b). R. B. J. also contended that it had a common-law right of action under state law in light of Gate City's violation of these federal statutes.[1] Gate City moved for summary judgment. The motion was granted and judgment was entered dismissing the suit. This appeal followed.

The National Flood Insurance Program[2] is based upon a number of separate enactments which date from 1968 to 1977. The nationwide federal program was created to enable property owners to purchase reasonably priced flood insurance,[3] and to encourage local communities to adopt sound land use policies designed to diminish damage from flooding.[4] The program was to be administered by the Department of Housing and Urban Development (HUD) in conjunction with private insurance companies.[5]

The purpose stated by Congress in creating this program is summarized by the following findings:

"(a) The Congress finds that (1) from time to time flood disasters have created personal hardships and economic distress which have required unforeseen disaster relief measures and *have placed an increasing burden on the Nation's re-*

*sources*; (2) despite the installation of preventative and protective works and the adoption of other public programs designed to reduce losses caused by flood damage, these methods have not been sufficient to protect adequately against growing exposure to future flood losses; (3) as a matter of national policy, a reasonable method of sharing the risk of flood losses is through a program of flood insurance which can complement and encourage preventative and protective measures; and (4) if such a program is initiated and carried out gradually, it can be expanded as knowledge is gained and experience is appraised, thus eventually making flood insurance coverage available on reasonable terms and conditions to persons who have need for such protection."[6] [Emphasis added.]

A further purpose of this program was to "encourage lending and credit institutions, as a matter of national policy, to assist in furthering the objectives of the flood insurance program . . . ."[7]

The program initially was voluntary on the part of property owners. The voluntary procedures created by the 1968 Act, however, were inadequate to accomplish the Act's statutory mandate of reducing the "increasing burden on the Nation's resources."[8]

The inadequacies of the voluntary procedures in the 1968 Act became apparent shortly after enactment and, a few years later, Congress enacted the Flood Disaster

---

1.  Paragraph XI of R. B. J.'s complaint alleges that Gate City's violation of Grand Forks city ordinances proximately caused damage to R. B. J. This issue was not argued on appeal and we consider it to be abandoned.

2.  42 U.S.C. §§ 4001–4128 (1968).

3.  *Id.* at § 4001(d).

4.  *Id.* at § 4001(e).

5.  The Secretary of HUD was directed to determine the extent and location of flood hazard zones and to develop "comprehensive criteria" to encourage "the adoption of adequate state and local measures which, to the maximum extent feasible, will—

"(1) constrict the development of land which is exposed to flood damage where appropriate,
"(2) guide the development of proposed construction away from locations which are threatened by flood hazards,
"(3) assist in reducing damage caused by floods, and
"(4) otherwise improve the long-range management and use of flood-prone areas, . . . ."
42 U.S.C. § 4102(c) (1968).

6.  *Id.* at § 4001(a).

7.  *Id.* at § 4001(e)(3).

8.  *Id.* at § 4001(a)(1).

Protection Act of 1973.[9] An integral part of the 1973 Act was 42 U.S.C. § 4012a(b).[10] This statute required federal supervisory agencies to adopt regulations requiring lenders to refuse loans in flood zones unless the property owners first purchased flood insurance. Insurance coverage was to extend to the amount and term of the loan.

In 1974, the National Flood Insurance program was again amended. The 1974 amendment required federal supervisory agencies to promulgate regulations directing lenders to notify borrowers, a reasonable period in advance of closing, that the property securing the loan is located in an identified flood zone. This notice requirement was codified in 42 U.S.C. § 4104a.[11]

R. B. J. contends that the notice requirements of § 4104a and the mandatory prohibitions of § 4012a(b) necessitate an implied right of action against Gate City for failure to comply with the federal statutory provisions. Gate City's noncompliance with the federal statutes is not in dispute.

The theory of implied private actions is basically a matter of statutory construction. *Transamerica Mortgage Advisors v. Lewis*, 444 U.S. 11, 15, 100 S.Ct. 242, 245, 62 L.Ed.2d 146 (1979). The question of whether or not a federal statute creates a private right of action is ultimately one of Congressional intent. *Universities Research Assn. v. Coutu*, 450 U.S. 754, 767–769, 101 S.Ct. 1451, 1460, 67 L.Ed.2d 662, 675 (1981). Congressional intent has been traditionally determined by an examination of the language and focus of the statute, its legislative history, and a consideration of its statutory purpose. *See Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2087, 45 L.Ed.2d 26 (1975).[12] Our analysis must then begin with the language of the statutes. *See Middlesex Cty. Sewerage Auth. v. Sea Clammers*, —— U.S. ——, ——, 101 S.Ct. 2615, 2622, 69 L.Ed.2d 435, 446 (1981).

Neither § 4012a(b) nor § 4104a expressly creates a right of action in favor of borrowers against lenders for violating these statutes. This omission, although significant, is not dispositive if, among other things, the

**9.** Flood Disaster Protection Act of 1973, Pub. L.No. 93–234, 87 Stat. 978 (1973).

**10.** "(b) Each Federal instrumentality responsible for the supervision, approval, regulation, or insuring of banks, savings and loan associations, or similar institutions shall by regulation direct such institutions not to make, increase, extend, or renew after the expiration of sixty days following December 31, 1973, any loan secured by improved real estate or a mobile home located or to be located in an area that has been identified by the Secretary as an area having special flood hazards and in which flood insurance has been made available under this chapter, unless the building or mobile home and any personal property securing such loan is covered for the term of the loan by flood insurance in an amount at least equal to the outstanding principal balance of the loan or to the maximum limit of coverage made available with respect to the particular type of property under the chapter, whichever is less." 42 U.S.C. § 4012a(b) (1973).

**11.** "§ 4104a. Notification of purchaser or lessee of special flood hazards in area of location of improved real estate or mobile home securing loan; regulations prescribing procedures.

"Each federal instrumentality responsible for the supervision, approval, regulation, or insuring of banks, savings and loan associations, or similar institutions shall by regulation require

such institutions, as a condition of making, increasing, extending, or renewing (after the expiration of thirty days following August 22, 1974) any loan secured by improved real estate or a mobile home located or to be located in an area that has been identified by the Secretary under this chapter or Public Law 93–234 as an area having special flood hazards, to notify the purchaser or lessee (or obtain satisfactory assurances that the seller or lessor has notified the purchaser or lessee) of such special flood hazards, in writing, a reasonable period in advance of the signing of the purchase agreement, lease, or other documents involved in the transaction." 42 U.S.C. § 4104a (1974).

**12.** The future of the original four-point *Cort* analysis has been placed in doubt by recent United States Supreme Court decisions. *California v. Sierra Club*, 451 U.S. 287, 101 S.Ct. 1775, 68 L.Ed.2d 101 (1981) (Stevens J., concurring) (*Cort v. Ash* analysis is still a part of our law); *Contra, California v. Sierra Club* (Rehnquist, J., concurring in the judgment) (*Cort v. Ash* has been limited). Regardless of the future validity of the *Cort v. Ash* analysis, our determination of the Congressional intent to provide a private cause of action is in accord with the litany of recent United States Supreme Court decisions. *See* cases cited at *supra* note 16.

language of the statutes indicates that they were enacted for the special benefit of a class of which the petitioner is a member. *See Northwest Airlines v. Transport Workers,* 451 U.S. 77, 91, 101 S.Ct. 1571, 1580, 67 L.Ed.2d 750, 763 (1981); *Cannon v. University of Chicago,* 441 U.S. 677, 689, 99 S.Ct. 1946, 1953, 60 L.Ed.2d 560 (1979). Here, however, the language does not indicate that Congress intended the statutes to especially benefit borrowers, such as R. B. J.

Section 4012a(b) is simply phrased as a directive to a federal agency ordering it to prohibit lending institutions from making loans secured by real property in flood zones unless the borrower has obtained flood insurance. The language of § 4012a(b) does not unmistakably focus on borrowers as the class of beneficiaries whose welfare Congress intended to further. *See California v. Sierra Club,* 451 U.S. 287, 294, 101 S.Ct. 1775, 1779, 68 L.Ed.2d 101, 108 (1981). Here, federal concern was not primarily the plight of the property developer-borrowers.[13]. The plain language of the statute evinces a greater concern for the lender than for the borrower. The requisite insurance need only be for the amount and term of the unpaid balance.[14] If a property-developer borrower is the prime beneficiary, greater coverage would be required.

Section 4104a directs the appropriate federal agency to require lending institutions to notify borrowers of the fact that the real property securing their loans is located within an area having special flood hazards.[15] This statute reads as a directive, requiring certain actions by a federal agen-

cy. *See Cannon v. University of Chicago, supra,* 441 U.S. at 690–92, 99 S.Ct. 1946, at 1954–55, 60 L.Ed.2d 560. Such language, without more, is not sufficient to satisfy the increasingly tougher standards used to imply private causes of action. *See Touche Ross & Co. v. Redington,* 442 U.S. 560, 578, 99 S.Ct. 2479, 2490, 61 L.Ed.2d 82 (1979). We conclude that Congress was concerned not with private rights but rather with the federal government's ability to respond to continuing natural disasters with huge expenditures of federal dollars. *Accord, California v. Sierra Club, supra,* 451 U.S. at 294–96, 101 S.Ct. at 1780, 68 L.Ed.2d at 109.

R. B. J. contends that the language of these statutes indicate that they were enacted for the special benefit of borrowers. The fact that borrowers may suffer "special injury" by violation of these statutes, however, does not necessarily make them members of a class for whose especial benefit the statute was enacted. *See* the litany of recent United States Supreme Court decisions.[16] The mere fact that these statutes have been violated, and that a flood has harmed R. B. J., does not automatically give rise to a private cause of action in R. B. J.'s behalf. *Cannon v. University of Chicago, supra,* 441 U.S. at 688, 99 S.Ct. 1946, at 1953, 60 L.Ed.2d 560 (1979).

The structure of these statutes similarly counsels against recognition of an implied right of action in this case. The language of the statutes entrusts enforcement of the statutory requirements to the appropriate federal agencies. The Federal Home Loan Bank Board has the authority to issue cease and desist orders against a lending

---

13. "... and that such flood insurance be considered in the interest of the borrowers, the lending institutions, and the savers and depositors; and these institutions might well encourage flood insurance by borrowers in low risk areas." S.Rep.No.93–583, 93d Cong., 1st Sess., *reprinted in* [1973] U.S.Code Cong. & Ad.News, 3217, 3220.

14. 42 U.S.C. § 4012a(b) (1973).

15. *See supra* note 11.

16. *See, e.g., Middlesex City Sewerage Auth. v. Sea Clammers,* —— U.S. ···, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981); *Texas Industries v. Radcliff Materials,* 451 U.S. 630, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981); *California v. Sierra Club,* 451 U.S. 287, 101 S.Ct. 1775, 68 L.Ed.2d 101 (1981); *Universities Research Assn v. Coutu,* 450 U.S. 754, 101 S.Ct. 1451, 67 L.Ed.2d 662 (1981); *Transamerica Mortgage Advisors v. Lewis,* 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979); *Touche Ross & Co. v. Redington,* 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979).

institution's officers,[17] to terminate unsafe or unsound practices,[18] to impose administrative remedies,[19] and to require affirmative action to prevent or correct violations.[20] The comprehensive character of a remedial scheme expressly fashioned by Congress strongly evidences an intent not to authorize other remedies. *See Nat. R. R. Passenger Corp. v. Passengers Assn.,* 414 U.S. 453, 458, 94 S.Ct. 690, 693, 38 L.Ed.2d 646 (1974). It is not within the competence of the judiciary to amend these comprehensive enforcement schemes by adding to them another private remedy not authorized nor intended by Congress. *See Northwest Airlines v. Transport Workers, supra,* 451 U.S. at 93, 101 S.Ct. at 1581, 67 L.Ed.2d at 765 (1981).

The legislative histories of §§ 4012a(b) and 4104a similarly provide no support for R. B. J.'s position. The failure of Congress expressly to provide a private remedy ordinarily indicates an intent on its part to not make such a remedy available. R. B. J. has offered little discernible evidence that a remedy was nevertheless intended in this instance. *See Cannon v. University of Chicago, supra,* 441 U.S. at 694, 99 S.Ct. 1946, at 1956, 60 L.Ed.2d 560 (1979). Our examination of the legislative history of these sections disclosed no support for R. B. J.'s contention that Congress intended to provide borrowers with a private cause of action. Indeed, Congressional silence on a private cause of action serves to confirm that, in enacting the flood program, Congress was concerned not with private rights but rather with the federal government's inability to respond to continuing natural disasters with hugh expenditures of federal dollars.

■ The underlying purpose of these statutes also indicate that Congress did not intend to create the right of action asserted by R. B. J. Section 4012a(b) was added to the National Flood Program in 1973. Congress recognized that an effective federal flood insurance program required mandatory flood insurance coverage, if available. S.Rep.No.93–583, 93d Cong., 1st Sess., *reprinted in* [1973] U.S.Code Cong. & Adm. News, 3217, 3218. We conclude that the major thrust of § 4012a(b) was to encourage wise land use management in order to avert future economic loss resulting from flooding.[21]

■ Section 4104a, enacted in 1974, requires lending institutions to notify borrowers that the property securing their loan is located in a flood hazard area. This amendment was a single provision in an omnibus bill of eight chapters covering a broad range of federal housing and urban development programs. It therefore has little legislative history. However, from a short statement of purpose by its sponsor, it is clear that the reason for the notice requirement was to discourage flood zone development, and not to provide aggrieved borrowers with a private cause of action.[22]

■ In implying a private cause of action, the court must be cognizant of the separation-of-powers doctrine. Our constitutional obligations prevent us from providing a cause of action significantly broader than the remedy Congress intended to provide. The implication of a private right of action on the basis of Congressional silence in this instance would, at best, be an unwarranted intrusion upon the legislative domain. *See Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 64, 98 S.Ct. 1670, 1680, 56 L.Ed.2d 106 (1978).

■ We hold that R. B. J. does not have an implied private cause of action against Gate City under 42 U.S.C. §§ 4012a(b) and 4104a.

17. 12 U.S.C. § 1464(d)(2)(A).

18. 12 U.S.C. § 1464(d)(4).

19. 12 U.S.C. § 1464(d)(8)(B).

20. 12 U.S.C. § 1464(d)(2)(A).

21. S.Rep.No.93–583, 93d Cong., 1st Sess., *reprinted in* [1973] U.S.Code Cong. & Adm.News, 3217, 3223.

22. 120 Cong.Rec. 20308 (1974) (remarks by Rep. Jones).

The question of whether or not a common-law right of action exists for the violation of a federal statute is a matter of state law. *See, Till v. Unifirst Federal S. & L. Ass'n*, 653 F.2d 152 (5th Cir. 1981). We are not able to find a state cause of action in this instance. The separation-of-powers doctrine and principles of federalism militate against the adoption of the federal statute as the standard of care in a state negligence action when no private cause of action, either explicit or implicit, exists in the federal statute.[23]

We conclude that 42 U.S.C. §§ 4012a(b) and 4104a, and the regulations promulgated thereunder, do not create a standard of conduct for which the breach would give rise to an action for common-law negligence. The judgment is affirmed.

ERICKSTAD, C. J., and PAULSON, SAND and VANDE WALLE, JJ., concur.

---

**23.** *See Cannon v. University of Chicago*, 441 U.S. 677, 730–31, 99 S.Ct. 1946, 1974–75, 677 L.Ed.2d 560 (1979) (Powell, J., dissenting). (Justice Powell stated that the majority's opinion illustrates how the implication of a private right of action "denigrates the democratic process.")