JUDGE SANDRA CABRINA JENKINS
| ;This appeal arises from a series of commercial mortgage loans used to finance the purchase of land for the development of a high rise condominium complex on the lakefront in New Orleans. FMB Development, LLC (“FMB”) appeals the trial court’s July 18, 2016 judgment granting a motion for summary judgment filed by appellees, Capital One N.A., and Capital One Financial Corporation (cobeetively, “Capital One”), and dismissing all claims by FMB against Capital One, with prejudice. For the reasons that follow, we affirm.
FACTUAL AND PROCEDURAL HISTORY
Between September 10, 2004 and July 21, 2005, FMB entered into five “Multiple *433 Indebtedness Mortgages” (collectively, the “Mortgage Contracts”) with Capital One[1] to secure loans in the total principal amount of $3,625,000.00. These loans financed FMB’s purchase of various parcels of land in the general area fronting Lake Marina Avenue, West Robert E. Lee Boulevard, and Regent Street in New Orleans (the “Mortgaged Property”). The parcels of land were partially [{.improved with “several old single-family, doubles, and multi-family buildings, with other portions vacant and grassy.”[2]
As part of the loan process, Capital One ordered an appraisal of the Mortgaged Property from Bird and Associates (“Bird”). Bird submitted an appraisal to Capital One dated August 26, 2004, as amended on July 12, 2005. In the appraisal, Bird reported that all of the Mortgaged Property was located in “FEMA Flood Zone AO.” The appraisal specifically stated as follows:
This report is prepared for the sole and exclusive use of the client identified in the report, and it may not be used for any purpose other than that which is specified in the report. No third parties are authorized to rely upon this report without written consent of the appraiser, and in any event, only in its entirety.
On August 29, 2005, Hurricane Katrina struck the New Orleans area and the subsequent flooding allegedly destroyed the residential buildings on the Mortgaged Property, which was not covered by flood insurance.
After Hurricane Katrina struck, the condominium project languished. In March 2008, Capital One agreed to renew and decrease FMB’s original loans to $3,360,000.00, with a renewal for three years. On April 17, 2008, FMB executed a promissory note in favor of Capital One in the principal amount of $3,360,000.00, with a maturity date of April 17, 2011 (the “Note”).
On June 17, 2011, and January 27, 2012, FMB executed two Agreements Regarding Loan Modification (collectively, the “Loan Modifications”), which ^extended the maturity date of the Note.to January 17, 2012 and April 16, 2012, respectively. In each of the Loan Modifications, FMB agreed as follows:
BORROWER ACKNOWLEDGES THAT THIS MODIFICATION REPRESENTS CHANGES TO ANY EXISTING DEBT OWED TO BANK. IN CONSIDERATION OF BANK’S CONSENT .TO SUCH CHANGES UPON THE TERMS SET FORTH HEREIN, BORROWER HEREBY AGREES THAT ALL DISPUTES AND CLAIMS WHATSOEVER OF ANY KIND OR NATURE WHICH BORROWER PRESENTLY HAS OR MAY HAVE AGAINST BANK ARE FULLY AND FINALLY RELEASED, COMPROMISED AND SETTLED. BORROWER ... DOES HEREBY EXPRESSLY RELEASE AND FOREVER RELIEVE, DISCHARGE AND GRANT FULL ACQUITTANCE TO BANK FOR AND FROM ANY AND ALL CAUSES OF ACTION, SUITS, *434 CLAIMS, DEBTS, OBLIGATIONS OR LIABILITIES OF ANY NATURE WHATSOEVER,' KNOWN OR UN-KOWN, ALLEGED OR NOT ALLEGED, WHICH BORROWER HAS OR MAY HAVE AGAINST BANK, ITS AGENTS, OFFICERS, EMPLOYEES, DIRECTORS AND SHAREHOLDERS AS OF THE EFFECTIVE DATE HEREOF. THIS RELEASE SHALL BE CONSTRUED TO HAVE THE BROADEST POSSIBLE SCOPE. [Emphasis added.-]
On May 16⅛ 2013, FMB filed a Petition for Damages against defendants Hibernia National Bank, Capital One Financial Corporation, and Bank South, alleging that in August 2005, Hurricane Katrina caused a total loss by flooding of all structures on FMB’s Mortgaged properties. According to FMB, the defendants breached the provisions of the Mortgage Contracts by failing to notify FMB that the properties were in a special flood hazard area, failing to notify FMB of the amount of flood insurance that was required by Capital One, and failing to place the required flood insurance on the property when FMB did not. On -July 3, 2013, FMB filed a First Supplemental and Amended Petition adding Capital One, N:A. as a defendant.
|4On August 24, 2015, Capital One filed a Motion for Summary Judgment seeking dismissal of FMB’s claims 'on the following grounds: (1) FMB’s claims were barred by the res judicata effect of the 2011 and 2012 Loan Modifications; (2) Capital One had no duty under the Mortgage Contracts to notify FMB that the properties were in a special flood hazard area, or to procure or maintain flood insurance on the Mortgaged Properties; and (3) Capital One had no fiduciary duty to notify FMB that the properties were in a special flood- hazard area.
On July 18, 2016, the trial court held a hearing on Capital One’s Motion for Summary Judgment. On July 18, 2016, the trial court signed a final judgment granting Capital Oné’s Motion for Summary Judgment and dismissing all of FMB’s claims and demands against' Capital One, with prejudice. FMB appealed,
DISCUSSION
On appeal, FMB asserts four assignments of. error:
(1) The trial court erroneously ruled that the claims by FMB were barred by res judicata;
(2) The trial court erred .in finding that Capital One did not breach the contract with FMB;
(3) The trial court erred in ruling that FMB did not have'a claim for detrimental reliance against Capital One;
(4) The trial court erred in ruling that Capital One did not owe a fiduciary duty to FMB.
Summary Judgment Criteria/Standard of Review
This court applies a de novo standard' of review when considering rulings on motions for summary judgment, using the same criteria' that governed the trial court’s determination of whether summary judgment was appropriate. Bank of New York Mellon v. Smith, 15-0530, p. 8 (La. 10/14/15), 180 So.3d 1238, 1243. Capital One’s Motion for Summary Judgment is governed by criteria set forth in the version of La. Code Civ. P. art. 966 in effect prior to the 2015 amendments.[3]
*435 A court must grant a motion for summary judgment “[i]f the pleadings, depositions, answers 'to interrogatories, and admissions on file, together with the affidavits, if any, admitted for purposes of the motion for summary judgment, show that there is no genuine -issue as- to material fact, and that mover is entitled to judgment as a matter of law.” La. Code Civ. P. art. 966(B)(2) (2015).
Before the 2015 amendments, the summary judgment standard was as follows:
The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mov-ant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
La. Code Civ. P. art. 966(C)(2) (2015).

Assignment of Error No. 1: Res Judicata

FMB contends that its claims are not barred by the res judicata effect of the release language in the Loan Modifications. Given our disposition of FMB’s individual claims in FMB’s second through fourth assignments of error, we pretermit any discussion of this first assignment of error.

¡¿Assignment of Error No. 2: Mortgagee’s Duty to Procure and Maintain Flood Insurance

In light of our disposition of FMB’s second through fourth assignments of error, we first address FMB’s second assignment of error. FMB contends that the trial court erred in ruling that Capital One did not have a duty to notify FMB that the Mortgaged Properties, were in a special flood hazard area so that FMB could obtain flood insurance. FMB asserts that Capital One’s duty arises under the language of the Mortgage Contracts and the provisions of the National Flood Insurance Act.
FMB relies on the following language from the Mortgage Contracts to support its claim that Capital One was obligated to nbtify FMB that the Mortgaged Properties were in a special flood hazard area:
Required Insurance. So long as this Mortgage remains in effect, Mortgagor shall, at its’ sole host, keep and or cause others, at their expense, to keep' the Property constantly insured against loss by fire, by hazards included within the term- “extended coverage,” and by such other hazards (including flood insurance, where applicable) as may be required by Mortgagee. .
* * * *
Should thé .Real Property be located' in aii area designated by the Director of the Federal Emergency Management Agency as a special flood hazard' area, Mortgagor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Mortgagee that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan *436 and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Mortgagee, and to maintain such insurance for the term of the loan.
Capital One cites pertinent language in the Mortgage Contracts providing that Capital One was not obligated to purchase insurance if FMB failed to do so:
ADDITIONAL ADVANCES FOR SPECIFIC PURPOSES. Mortgagee shall have the right, within Mortgagee’s sole option and |7discretion, to make Additional Advances on Mortgagor’s behalf for the following purposes:
Insurance. If Mortgagor should for any reason fail to maintain insurance on the Property as required under this Mortgage, Mortgagee may make Additional Advances on Mortgagor’s behalf for the purpose of purchasing and maintaining, and Mortgagee may purchase and maintain such insurance coverage. ...
No obligations. Nothing under this Mortgage shall obligate Lender to make any such Additional Advances or to take any of the above actions on Grantor’s behalf, or as making Lender in any way responsible or liable for any loss, damage or injury to Grantor, or to any other person or persons, resulting from Lender’s election not to advance such additional sums or take such action or actions. [Emphasis added.]
“The interpretation of a contract is the determination of the common intent of the parties.” La. Civ. Code art. 2045. “When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent.” La. Civ. Code art. 2046.
Based on the clear and unambiguous language of the Mortgage Contracts, FMB, as the mortgagor, was the only party contractually obligated to procure and maintain flood insurance on the Mortgaged Property (“Mortgagor shall, at its sole cost, keep and or cause others, at their expense, to keep the Property constantly insured.”). If FMB failed to obtain the required flood insurance, however, Capital One had no contractual obligation to procure that insurance on FMB’s behalf (“If Mortgagor should for any reason fail to maintain insurance on the Property as required under this Mortgage, Mortgagee may make Additional Advances on Mortgagor’s behalf for the purpose of purchasing and maintaining, and Mortgagee may purchase and maintain such insurance coverage.”). Finally, although the Mortgage Contracts obligated FMB to purchase flood insurance if notified by FMB |sthat the property was in a special flood area, there is no provision in the Mortgage Contracts which required Capital One to provide such notification.
Accordingly, we find that Capital One had no contractual obligation to notify FMB that the Mortgaged Property was in a special flood hazard area, or to purchase such flood insurance on FMB’s behalf when it failed to do so. See Paternostro v. Wells Fargo Home Mortg., Inc., 09-469, p. 10 (La. App. 5 Cir. 12/8/09), 30 So.3d 45, 51; Doss v. Cuevas, 07-1803, p. 5 (La. App. 1 Cir. 3/26/08), 985 So.2d 740, 744; Oliver v. Central Bank, 26,932, pp. 10-11 (La. App. 2 Cir. 5/10/95), 658 So.2d 1316, 1323; Blackstone v. Chase Manhattan Mortg. Corp., 802 F.Supp.2d 732, 738 (E.D. La. 2011), aff'd, 503 Fed.Appx. 251 (5th Cir. 2012); Morris v. Countrywide Home Loans, No. 06-5472, 2008 WL 638615, at *3 (E.D. La. Mar. 5, 2008). Capital One, therefore, is entitled to summary judgment on FMB’s breach of contract claim.
*437 FMB also contends that Capital One was obligated to inform FMB that the Mortgaged Property was in a special flood hazard area pursuant to the National Flood Insurance Act (“NFIA”), 42 U.S.C. § 4001, et seq.
The NFIA was originally enacted in 1968 -with the goals of providing affordable flood insurance to home owners living in high-risk areas and easing the burden that flood disasters place on the federal treasury. 42 U.S.C. § 4002. In 1973, the NFIA was amended to prohibit federally regulated lending institutions from making any real estate loans in a special flood hazard area unless the property is covered by flood insurance. 42 U.S.C. § 4012a(b)(1). Under the NFIA, when improved property is in a special flood hazard area, the lender must notify the borrower of the requirement to have flood insurance. 42 U.S.C. § 4012a(e)(1). If the borrower fails to buy such insurance within forty-five days of being notified, lathe lender is required to buy it for the borrower and charge the costs back to the borrower. 42 U.S.C. § 4012a(e)(2). A lender that has a “pattern or practice” of violating Section 4012a shall be assessed civil penalties “by the appropriate Federal entity.” 42 U.S.C. § 4012a(f)(1)-(2).
State and federal courts, including the United States Fifth Circuit and Louisiana federal district courts, have uniformly found that a borrower has no express or implied private right of action for violations of the NFIA. Audler v. CBC Innovis Inc., 519 F.3d 239, 253 (5th Cir. 2008); Wentwood Woodside I, L.P. v. GMAC Commercial Mortg. Corp., 419 F.3d 310, 323 (5th Cir. 2005); Till v. Unifirst Fed. Sav. & Loan Ass’n, 653 F.2d 152, 161 (5th Cir. Unit A Aug. 1981); Blackstone, 802 F.Supp.2d at 736; Williams v. EFCU Fin. Fed. Credit Union, No. 17-73-JWD-RLB, 2017 WL 1659056, at *4 (M.D. La. Apr. 12, 2017); Highmark Fed. Credit Union v. Hunter, 814 N.W.2d 413, 417 (S.D. 2012); Bagelmann v. First Nat. Bank, 823 N.W.2d 18, 24 (Iowa 2012); R.B.J. Apartments, Inc. v. Gate City Sav. & Loan Ass’n, 315 N.W.2d 284, 289 (N.D. 1982).
In Audler, the Fifth Circuit’s decision rested in part on its conclusion that “the purpose of the [NFIA’s] requirement that a lender obtain a flood zone determination is not to inform the borrower of the home’s flood zone status, but rather to protect the lender and the federal government from the financial risk that is posed by uninsured homes located in flood zones. The flood zone was prepared for the benefit of the lender, and indirectly the federal government.” Audler, 519 F.3d at 252 (internal citation omitted).
In finding no private right of action, these federal and state courts reasoned that: (1) borrowers are not the primary beneficiaries of the NFIA because the principal purpose of enacting the statute was to reduce the massive economic | mburden on the federal government in providing flood disaster assistance; (2) the statute’s legislative history revealed no evidence of specific legislative intent to vest borrowers with any federal right to damages for violations of the NFIA; and (3) enforcement of the flood hazard notice requirement is vested in federal agencies, which have the authority to issue cease and desist orders, terminate unsafe or unsound practices, and impose administrative remedies, including monetary penalties.
Although the decisions of these courts are not controlling, we agree with their reasoning. Accordingly, we find that FMB has no private right of action under the NFIA based on Capital One’s alleged failure to notify FMB that the property was in a special flood hazard area.
FMB contends that even if there is no private right of action under the NFIA, *438 FMB has a state-law negligence action against Capital One based on its alleged violations of the NFIA,
We need not reach the merits of this argument.[4] The allegations in FMB’s Petition clearly show that any negligence claim has long prescribed, given that FMB did not file suit until 2013, eight years after Hurricane Katrina. Furthermore, FMB has not presented sufficient facts to interrupt prescription pursuant to the | n doctrine of contra non valentum[5] In re Med. Review Panel for Claim of Milton, 593 So.2d 795, 797 (La. App. 4th Cir. 1992).
FMB’s second assignment of error has no merit.

Assignment of Error No. 3: Detrimental Reliance

FMB contends that Capital One is liable for damages because FMB detrimentally relied upon Capital One to notify it that the Mortgaged Properties were in a special flood hazard area and that flood insurance was required. To establish detrimental reliance, a party must prove three elements by a preponderance of the evidence: (1) a representation by conduct or word; (2) justifiable reliance; and (3) a change in position to one’s detriment because of the reliance. Louisiana Office of Risk Mgmt. v. Richard, 13-0890, p. 5 (La. 10/15/13), 125 So.3d 398, 402. In Louisiana, “it is difficult to recover under the theory of detrimental reliance because estoppel is not favored in Louisiana law.” Id. Furthermore, detrimental reliance usually only comes into play when no written contract exists or the contract is found to be unenforceable. Boes Iron Works, Inc. v. Gee Cee Group, Inc., 16-0207, p. 18 (La. App. 4 Cir. 11/16/16), 206 So.3d 938, 952, writ denied, 17-0040 (La. 2/10/17), 216 So.3d 45.
After our de novo review of the record, we find that FMB cannot satisfy its burden of proof with respect to the first element of detrimental reliance. As the evidence in the record shows, Capital One made no promises that it would notify FMB that the property was in a special flood hazard area, or that it would purchase insurance on FMB’s behalf. See Oliver, 26,932, p. 12, 658 So.2d at 1323 (affirming dismissal of detrimental reliance claim where borrower did not establish a promise by lender to procure and maintain flood insurance on plaintiffs property); Doss, 07-1803, p. 6, 985 So.2d at 744-45 (affirming summary judgment *439 dismissing detrimental reliance claim where mortgage contract required -borrowers to obtain flood insurance, lender had no contractual obligation to purchase insurance, and borrowers presented no evidence that lender agreed to acquire flood insurance prior to loan closing); Blackstone, 802 F.Supp.2d at 740 (dismissing claim of detrimental reliance where borrower failed to identify any representation by mortgage lender that it would maintain flood insurance on property); Brown v. Am. Modern Home Ins. Co., No. 16-16289, 2017 WL 2290268, at *7 (E.D. La. May 25, 2017) (dismissing detrimental reliance claim where mortgage contract did not require lender to purchase insurance and borrower did not allege a promise by lender to obtain insurance that altered the mortgage contract). This assignment of error has no merit.

Assignment of Error No, 4: Breach of Fiduciary Duty

FMB contends that the Mortgage Contracts between Capital One and FMB imposed a fiduciary duty on Capital One to inform FMB that the Mortgaged Property was in a special hazard flood area. Under Louisiana law, in order for a “fiduciary relationship to exist between -a bank and its customer, there must be a written agency or trust agreement.” Gulf Coast Housing & Dev. Corp. v. Capital One, 16-0296, p. 4 (La. App. 4 Cir. 10/5/16), 203 So.3d 366, 369 (citing La. R.S. 6:1124) (emphasis in original). This statute provides:
No financial institution or officer or employee thereof shall be deemed or implied to be acting as a fiduciary, or have a fiduciary obligation or responsibility to its customers or to third parties other than shareholders of the institution, unless there is a written agency or | istrust agreement under which the financial institution specifically agrees to act and perform in the capacity of a fiduciary....
La. R.S. 6:1124 (emphasis added).
There is no language in the Mortgage Contracts or in any other written agreement whereby Capital One specifically agreed to act and perform in the capacity as a fiduciary. Accordingly, FMB failed to offer factual support sufficient to establish that it will be able to satisfy its eviden-tiary burden of proof at trial bn any alleged breach of fiduciary duty claim. Seals v. Omni Bank Ins. Companies, 12-0863, p. 14 (La. App. 4 Cir. 11/28/12), 104 So.3d 667, 674.
Moreover, La. R.S. 6:1124 expressly provides that any action by FMB pertaining to an alleged breach of fiduciary duty by Capital One must be initiated within one year of the first occurrence of the breach. FMB did not file suit until May 2013. Any claim for breach of fiduciary duty, therefore, is prescribed.
This assignment of error is without merit.
CONCLUSION
For all these reasons, we affirm the trial court’s July 18, 2016 judgment granting Capital One’s Motion for Summary Judgment and dismissing FMB’s claims, with prejudice.
AFFIRMED

. The mortgages were in favor of Hibernia National Bank and "any future holder or holders.” Hibernia was eventually acquired by Capital One.

. The parties dispute whether the loans were intended to be secured by the structures on the property. Capital One asserts that it considered the property "vacant land” so that no insurance was required. In the Mortgage Contracts, however, the encumbered property is described as "[t]he immovable (real) property specifically described,” together with "any and all present and future buildings, constructions, component parts, [and] improvements.”

. La. Code Civ. P. art. 966 was amended by 2015 La. Acts No. 422, § 1. The Act’s provisions became effective on January 1, 2016, after Capital One filed its Motion for Summary Judgment on August 24, 2015. The provisions of Act 422 do "not apply to any *435 motion for summary judgment pending adjudication or appeal on [January 1, 2016],” 2015 La. Acts No. 422, § 2.

. We note that most courts addressing this issue have barred state-law negligence claims based on alleged violations of the NFIA. See Bagelmann, 823 N.W.2d at 25-27 (collecting cases) ("We therefore agree that it would be inconsistent with the lack of a private right of action under the NFIA to authorize a negligence action based upon a duly that exists only because of the NFIA.”); Highmark, 814 N.W.2d at 418 ("If the NFIA does not create a private right of action, then it follows that an individual cannot use the NIFA to establish a duty in an individual civil claim.”); R.B.J. Apartments, 315 N.W.2d at 290 (“The separation-of-powers doctrine and principles of federalism militate against the adoption of the federal statute as the standard of care in a state negligence action when no private right of action, either explicit or implicit, exists in . the federal statute.”). The U.S. Fifth Circuit and at least two Louisiana federal district courts have refused to recognize a state-law negligence claim based on violations of the NFIA. See Audler, 519 F.3d at 253 (collecting cases); Duong v. Allstate Ins. Co., 499 F.Supp.2d 700, 704 (E.D. La. 2007); Barras v. Community Home Loan, LLC, No. 06-2000, 2007 WL 165213, at *2 & n.12 (W.D. La. Jan. 18, 2007).

. In exceptional circumstances, the doctrine of contra non valentum may serve to interrupt prescription “[w]here the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant." Renfroe v. State ex rel. Dept. of Transp. & Dev., 01-1646, p. 9 (La. 2/26/02), 809 So.2d 947, 953.